**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Glenwood Caverns Holdings LLC[1],<br><br>Debtor. | Chapter 11<br><br>Case No. 26-10166 (LSS) |

**APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO 28 U.S.C. § 156(C), 11 U.S.C. § 105(A), BANKRUPTCY RULE 2002(f), AND LOCAL RULE 2002-1(E), AUTHORIZING APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT, EFFECTIVE AS OF THE PETITION DATE**

Glenwood Caverns Holdings LLC ("Debtor"), hereby files this application ("Application"), by and through its proposed undersigned counsel, pursuant to 28 U.S.C. § 156(c), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(e) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware ("Local Rules"), for the entry of an order, substantially in the form attached hereto as **Exhibit A** ("Proposed Order"), authorizing the Debtor to retain and appoint Epiq Corporate Restructuring, LLC ("Epiq") as the claims and noticing agent ("Claims and Noticing Agent"), effective as of the Petition Date, with full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the above-captioned Chapter 11 Case. In support thereof, the Debtor submits the *Declaration of Alexander Warso in Support of the Application of the Debtor to Retain and Employ Epiq as Claims and Noticing Agent to the Debtor, as of the Petition Date* attached hereto as **Exhibit B** ("Warso

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Glenwood Caverns Holdings LLC (6861). The location of the Debtor's headquarters is 51000 Two Rivers Plaza Road, Glenwood Springs, CO 81601.

Declaration") and respectfully states as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this matter to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper with this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the requested relief is 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), Bankruptcy Rule 2002(f), Local Rule 2002-1(e), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

## BACKGROUND

4. On February 9, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), commencing the above-captioned case ("Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware. The Debtor is operating its business and managing its estate as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been requested and no committee has been appointed.

5. Details regarding the Debtor, its business, and the facts and circumstances that support this Application are set forth in greater detail in the *Declaration of Paul Mansicalco in*

*Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), proposed Chief Restructuring Officer, filed contemporaneously herewith.

**RELIEF REQUESTED**

6. Pursuant to 28 U.S.C. § 156(c), the Debtor seeks entry of an Order, substantially in the form of the Proposed Order submitted herewith, appointing Epiq as Claims and Noticing Agent, effective as of the Petition Date, to assume full responsibility of the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Chapter 11 Case.

**BASIS FOR RELIEF**

7. 28 U.S.C. § 156(c) authorizes the Court to use facilities or services other than the Office of the Clerk for the administration of certain chapter 11 cases.

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).

8. While the Debtor has not yet filed its schedules of assets and liabilities, it anticipates there will be more than 200 entities to receive notice in this Chapter 11 Case. Given the number of anticipated claimants and in accordance with Local Rule 2002-1(e), the Debtor believes it is both necessary and in the best interest of the Debtor's estate and its creditors to appoint a Claims and Noticing Agent.

9. The Debtor took great care in its selection of Epiq as the Claims and Noticing Agent in this case. Consistent with the Court's Claims Agent Protocol, the Debtor obtained and reviewed engagement proposals from three (3) court-approved claims and noticing agents to ensure a competitive comparison and selected Epiq after such review finding it to be the best fit for this

Chapter 11 Case. Debtor submits that Epiq's rates are competitive and reasonable given its quality of services and expertise with cases similar in size to this Chapter 11 Case. The terms of Debtor's agreement with Epiq are set forth in the Standard Services Agreement, dated as of January 16, 2026 ("Claims Administration Agreement"), a copy of which is attached to the Proposed Order as Exhibit 1.

10. Epiq employs professionals with significant experience in the legal and administrative aspects of large chapter 11 cases. Epiq's professionals have extensive experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases of a similar size to this Chapter 11 Case. Epiq has been employed as the official claims and noticing agent for many cases in this District. *See, e.g.*, *In re Tonopah Solar Enegy, LLC*, No. 26-10060 (JKS) (Bankr. D. Del. Jan. 23, 2026); *In re Flexshopper, Inc.*, No. 25-12254 (LSS) (Bankr. D. Del. Dec. 30, 2025); *In re Clearside Biomedical, Inc.*, No. 25-12109 (TMH) (Bankr. D. Del. Nov. 25, 2025); *In re GBI Services, LLC*, No. 25-12089 (CTG) (Bankr. D. Del. Nov. 25, 2025); *In re Navidea Biopharmaceuticals, Inc.*, No. 25-11779 (JKS) (Bankr. D. Del. Oct. 8, 2025); *In re Pinstripes Holdings, Inc.*, No. 25-11677 (KBO) (Bankr. D. Del. Sept. 10, 2025); *In re Walker Edison Holdco LLC*, No. 25-11602 (TMH) (Bankr. D. Del. Aug, 29, 2025); *In re Wag! Grouop Co.*, No. 25-11356 (TMH) (Bankr. July 22, 2025); *In re Mosaic Companies LLC*, No. 25-11296 (CTG) (Bankr. D. Del. July 11, 2025); *In re Alachua Gov't Servs.*, No. 25-11289 (JKS) (Bankr. D. Del. July 11, 2025); *In re Bedmar, LLC*, No. 25-11025 (JKS) (Bankr. D. Del. June 11, 2025); *In re Synthego Corp.*, No. 25-10823 (MFW) (Bankr. D. Del. May 8, 2025); *In re Royal Interco, LLC*, No. 25-10674 (TMH) (Bankr. D. Del. Apr 10, 2025); *In re Tupperware Brands Corp.*, No. 24-12156 (BLS) (Bankr. D. Del. Sept. 20, 2024); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug 7, 2024); *In re In re Meier's*

*Wine Cellars Acquisition, LLC*, No. 24-11575 (MFW) (Bankr. D. Del. July 25, 2024); *In re Salt Life Beverage, LLC*, No. 24-11468 (LSS) (Bankr. D. Del. June 30, 2024); *In re Solar Biotech, Inc.*, No. 24-11402 (LSS) (Bankr. D. Del. June 23, 2024); *In re Mountain Sports LLC*, No. 24-11385 (MFW) (Bankr. D. Del. June 18, 2024); *In re iSun, Inc.*, No. 24-11144 (TMH) (Bankr. D. Del. June 3, 2024); *In re Ambri Inc.*, No. 24-10952 (LSS) (Bankr. D. Del. May 5, 2024); *In re Casa Systems, Inc.*, No. 24-10695 (KBO) (Bankr. D. Del. Apr. 3, 2024); *In re Pride Group Holdings Inc.*, No. 24-10632 (CTG) (Bankr. D. Del. Apr. 1, 2024); *In re Airspan Network Holdings Inc.*, No. 24-10621 (TMH) (Bankr. D. Del. Mar. 31, 2024); *In re Charge Enterprises, Inc.*, No. 24-10349 (TMH) (Bankr. D. Del. Mar. 7, 2024); *In re Direct Orthopedic Care*, No. 24-10279 (JKS) (Bankr. D. Del. Feb. 21, 2024); In re Smallhold, Inc., No. 24-10267 (CTG) (Bankr. D. Del. Feb. 18, 2024); *In re Sientra, Inc.*, No. 10245 (JTD) (Bankr. D. Del. Feb. 12, 2024); *In re Burgess BioPower, LLC*, No. 24-10235(LSS) (Bankr D. Del. Feb. 9, 2024); *In re Terraform Labs Pte. Ltd*, No. 24-10070 (BLS) (Bankr. D. Del. Jan. 29, 2024).

11. The appointment of Epiq as Claims and Noticing Agent in this Chapter 11 Case will relieve the Clerk's office of the administrative burden related to what may be an overwhelming number of claims, and ensure the timely distribution of notices and processing of claims.

## SERVICES TO BE PROVIDED

12. This Application only concerns work to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(e). For avoidance of doubt, any work to be performed by Epiq that falls outside the scope contemplated under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) is not included in this Application.

13. In its role as Claims and Noticing Agent, Epiq is permitted to perform the following services ("Claims and Noticing Services") and quality control related to such services:

a. Prepare and serve required notices and documents in this Chapter 11 Case in accordance with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") in the form and manner directed by the Debtor and/or the Court, including (i) notice of commencement of this Chapter 11 Case and the initial section 341(a) meeting of creditors, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of the case;

b. Maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs, listing the Debtor's known creditors and the amounts owed thereto;

c. Maintain, keep current, and make available upon request by a party in interest or the Clerk (i) a list of all potential creditors, equity holders and other parties in interest; and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010;

d. Furnish a notice to all potential creditors of the last date for filing proofs of claim, if necessary, and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the schedules, which may be effected by inclusion of such information (or lack thereof, in a situation where the schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

e. Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f. For all notices, motions, orders or other pleadings or documents served, prepared and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g. Process all proofs of claim received, if any, including those received by the Clerk's office, check said processing for accuracy, and maintain the original proofs of claim in a secured area;

h. Maintain an electronic platform for purposes of filing proofs of claim;

i. Maintain the official claims register ("Claims Register"), if any, for the Debtor on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (1) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

j. Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k. Implement necessary security measures to ensure the completeness and integrity of the Claims Register, if any, and the safekeeping of the original claims;

l. Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m. Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less than weekly;

n. Upon completion of the docketing process for all claims received to date, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o. Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register; and any service or mailing list, including to identify and eliminate duplicative claims and addresses from such lists;

p. Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q. Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

r. Monitor the Court's docket in this chapter 11 case and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

s. If the case is converted to chapter 7, contact the Clerk's office within three (3) days of notice to Epiq of entry of the order converting the case;

t. Thirty (30) days prior to the close if this case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Epiq and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of this case;

u. Within fourteen (14) days of notice to Epiq of entry of an order closing the case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the case;

v. Within fourteen (14) days of entry of an order dismissing the chapter 11 case or within twenty-eight (28) days of entry of a final decree, Epiq shall (a) forward to the Clerk an electronic version of all imaged claims, (b) upload the creditor mailing list into CM/ECF, and (c) docket a final Claims Register; and

w. Within the earlier to occur of (a) fourteen (14) days of entry of an order converting the chapter 11 case and (b) entry of a termination order, Epiq shall (i) forward to the Clerk an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF, and (iii) docket a final Claims Register.

14. The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

15. Epiq shall not employ any past or present employee of the Debtor for work that involves this Chapter 11 Case.

## COMPENSATION

16. The Debtor is proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Claims Administration Agreement. The Debtor requests that the undisputed fees and expenses incurred by Epiq in its performance of the Claims and Noticing Services be treated as administrative expenses pursuant to 28 U.S.C. § 156(c) and Bankruptcy Code § 503(b)(1)(A), and be paid in the ordinary course of business without further application to or order of the Court.

17. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, counsel for the Debtor, the Office of the United States Trustee for the District of Delaware ("UST"), any standing trustee or official committee of unsecured creditors appointed in this chapter 11 case, and any party in interest who specifically requests service of the monthly invoices.

18. If any disputes arise that are related to the Claims Administration Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If the parties are unable to resolve the dispute, the parties may seek resolution of the matter from the Court.

19. Before the Petition Date, the Debtor provided Epiq a retainer in the amount of $20,000. Epiq seeks to first apply the retainer to all prepetition invoices, and thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

20. Additionally, under the terms of the Claims Administration Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Epiq and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Claims Administration Agreement, except in circumstances resulting solely from Epiq's gross negligence or willful misconduct or as otherwise provided in the Claims Administration Agreement or the Proposed Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this chapter 11 case.

## DISINTERESTEDNESS

21. As Claims and Noticing Agent and as described in greater detail in the Declaration,

Epiq is a disinterested party for the following reasons:

a. Epiq is not a creditor of the Debtor;

b. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c. By accepting employment in this chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d. In its capacity as the Claims and Noticing Agent this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e. Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f. Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

g. In its capacity as Claims and Noticing Agent in this chapter 11 case, Epiq will not intentionally misrepresent any fact to any person;

h. Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i. Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j. None of the services provided by Epiq as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

22. In view of the foregoing, the Debtor believes that Epiq is a "disinterested person" within the meaning of Bankruptcy Code section 101(14).

23. Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

24. This Application is in compliance with the Claims Agent Protocol and conforms

with 28 U.S.C. § 156(c). In the event of any inconsistency between this Application, the Order, and the Claims Administration Agreement, the Order shall govern.

## REQUEST FOR WAIVER OF STAY

25. Should any of the relief sought by this Application be construed as a use of property under Bankruptcy Code § 363(b), the Debtor respectfully requests a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h). The Bankruptcy Rule provides " [u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h).

26. As described in this Application and the First Day Declaration, the relief sought is necessary for the Debtor to operate its business without interruption and to preserve value of its estate. As such, the Debtor seeks an Order waiving the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

27. The Debtor will provide notice of this Motion to the following parties or their respective counsel: (a) the United States Trustee for the District of Delaware; (b) counsel to Community Banks of Colorado; (c) the holders of the 20 largest unsecured claims against the Debtor; (e) the United States Department of Justice; (e) the Internal Revenue Service; (f) all relevant state and local taxing authorities; (g) the United States Environmental Protection Agency; (h) all relevant state environmental agencies; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. Because this Motion is seeking "first day" relief, the Debtor will serve this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m). The Debtor submits that no other or further notice is required under the circumstances.

WHEREFORE, the Debtor respectfully requests the entry of an Order substantially in the

form of the Proposed Order attached hereto, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Date: February 9, 2026
Wilmington, Delaware

**SULLIVAN NIMEROFF BROWN HILL LLC**

*/s/ William A. Hazeltine*

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195
Email: bsullivan@snbhlaw.com
whazeltine@snbhlaw.com

-and-

**BROWNSTEIN HYATT FARBER SCHRECK LLP**
Michael J. Pankow, *pro hac vice pending*
Amalia Y. Sax-Bolder, *pro hac vice pending*
Micah G. Hardy, *pro hac vice pending*
675 15th Street, Suite 2900
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
Email: mpankow@bhfs.com
asax-bolder@bhfs.com
mhardy@bhfs.com

*Proposed Counsel for the Debtor and Debtor in Possession*

# EXHIBIT A

## PROPOSED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Glenwood Caverns Holdings LLC,[1] | Case No. 26-10166 (LSS) |
| Debtor. | |

**ORDER GRANTING APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO 28 U.S.C. § 156(C), 11 U.S.C. § 105(A), BANKRUPTCY RULE 2002(f), AND LOCAL RULE 2002-1(E), AUTHORIZING APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT, EFFECTIVE AS OF THE PETITION DATE**

Upon the application ("Application") of Glenwood Caverns Holdings LLC ("Debtor") for entry of an order ("Order") pursuant to 28 U.S.C. §156(c), 11 U.S.C.§ 105(a), Rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(e) of the Local Rules for the United States Bankruptcy Court for the District of Delaware ("Local Rules"), authorizing the retention and appointment of Epiq Corporate Restructuring, LLC ("Epiq") as the Claims and Noticing Agent[2], effective as of the Petition Date; and upon consideration of the Warso Declaration and the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 20 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Glenwood Caverns Holdings LLC (6861). The location of the Debtor's headquarters is 51000 Two Rivers Plaza Road, Glenwood CO 81601.

[2] Capitalized terms not defined herein shall have the meaning attributed to them in the Application.

Court being satisfied that Epiq has the capability and experience to provide such services and that Epiq does not hold an interest adverse to the Debtor or the estate with respect to the matters upon which it is to be engaged; and this Court having found that the relief requested in the Application is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Application and opportunity for hearing were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and the evidence in support thereof and having heard the statements in support of the relief requested in the Application at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED that:

1. The Application is GRANTED.

2. The Debtor is authorized to retain Epiq as Claims and Noticing Agent and Epiq is appointed as the Claims and Noticing Agent, effective as of the Petition Date, under the terms and conditions of the Claims Administration Agreement, as modified herein.

3. Epiq, as the Claims and Noticing Agent, is directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in this Chapter 11 Case (if any), and all related tasks, as described in the Application.

4. Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this Chapter 11 Case (if any) and is authorized and directed to maintain the official Claims Register for the Debtor, to provide public access to

every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

5. Epiq is authorized and directed to establish an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

6. Epiq is authorized to take such other action as may be necessary to comply with the duties detailed in the Application as modified herein.

7. Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8. Without further order of this Court, the Debtor is authorized and directed to compensate Epiq in accordance with the terms of the Claims Administration Agreement upon the receipt of invoices that detail the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9. Epiq shall maintain records in accordance with the Application as modified herein and shall serve monthly invoices on the Debtor, counsel for the Debtor, the Office of the United States Trustee for the District of Delaware, counsel for any statutory committee, and any party in interest who specifically requests service of the monthly invoices.

10. The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Claims Administration Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

11. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Epiq under this Order shall be an administrative expense of the Debtor's estate.

12. The Debtor shall indemnify Epiq and each other Indemnified Person, as that term is defined in the Claims Administration Agreement, under the terms of the Claims Administration Agreement, subject to the following modifications:

a. The Indemnified Persons shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Claims Administration Agreement for services other than the Claims and Noticing Services provided under the Claims Administration Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

b. Notwithstanding anything to the contrary in the Claims Administration Agreement, the Debtor shall have no obligation to indemnify Indemnified Persons, or provide contribution or reimbursement to Indemnified Persons, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Indemnified Person's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor allege the breach of Indemnified Person's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Claims Administration Agreement as modified by this Order; and

c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this Chapter 11 Case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this Chapter 11 Case, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Claims Administration Agreement (as modified by this Order), including without limitation the advancement of defense costs, the Indemnified Person or Epiq must file an application therefor in this Court, and the Debtor may not pay any such amounts to such Indemnified Person before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Indemnified Person for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify the Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, or reimbursement.

13. Notwithstanding anything to the contrary, Section 9 of the Claims Administration Agreement regarding limitation of liability shall be given no effect during this Chapter 11 Case.

14. In the event Epiq is unable to provide the services set out in this Order, Epiq will immediately notify the Clerk and Debtor's counsel and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtor's counsel.

15. The Debtor may submit a separate retention application pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Epiq but is not specifically authorized by this Order.

16. After entry of an order terminating Epiq's services as the Claims and Noticing Agent, upon the closing of this Chapter 11 Case, or for any other reason, Epiq shall be responsible for (a) forwarding to the Clerk an electronic version of all imaged claims, (b) uploading the creditor mailing lists into CM/ECF, and (c) docketing a final Claims Register.

17. Epiq shall not cease providing claims processing services during the case for any reason, including nonpayment, without an order of the Court.

18. In the event of any inconsistency between the Claims Administration Agreement, the Section 156(c) Application, and the Order, this Order shall govern.

19. The requirements of Bankruptcy Rule 6003 are satisfied.

20. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

22. The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

23. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# EXHIBIT 1

## Claims Administration Agreement

# EPIQ CORPORATE RESTRUCTURING

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

### 1. Services.

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on the Services Schedule hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

### 2. Term.

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

### 3. Charges.

3.1 For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule subject to any previously agreed upon discount if applicable. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2 Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 1, 2027. If such annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3 Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket travel expenses.

3.4 Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.5 Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission. Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.6 In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.7 To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $20,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. Epiq shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

**4. Confidentiality.**

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data. Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

**5. Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications,

applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property"). Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services. Client agrees not to copy or permit others to copy any of the Property.

**6. Bank Accounts**

At the request of the Client or Client Parties, Epiq shall be authorized to establish accounts with financial institutions in the name of and as agent for the Client to facilitate distributions pursuant to a Chapter 11 plan or other transactions. To the extent such accounts or other financial products are provided to the company, pursuant to Epiq's agreement(s) with financial institutions, Epiq may receive fees and other compensation from such institutions.

**7. Disposition of Data.**

7.1 Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data. Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq. Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq. Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services. Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

7.2 Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full. Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq. Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law). Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials. Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

**8. <u>Indemnification.</u>**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "<u>Indemnified Person</u>") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "<u>Losses</u>"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

**9. <u>Limitation of Liability</u>**

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT, THIS SECTION SHALL CONTROL.

(a) EACH PARTY AND ITS RESPECTIVE AGENTS SHALL NOT HAVE ANY OBLIGATION OR LIABILITY TO THE OTHER PARTY OR TO ANY THIRD PARTY (WHETHER IN TORT, EQUITY, CONTRACT, WARRANTY OR OTHERWISE AND NOTWITHSTANDING ANY FAULT, NEGLIGENCE, PRODUCT LIABILITY, OR STRICT LIABILITY IN ACCORDANCE WITH APPLICABLE LAW, RULE OR REGULATION) FOR ANY INDIRECT, GENERAL, PUNITIVE, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO BUSINESS INTERRUPTION, LOST WAGES, BUSINESS OR PROFITS, OR LOSS OF DATA INCURRED BY CLIENT OR ANY OTHER PERSON, ARISING OUT OF RELATING TO THIS AGREEMENT, OR ANY USE, INABILITY TO USE OR RESULTS OF USE OF THE SERVICES OR SOFTWARE OR OTHERWISE, EVEN IF SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) EPIQ SHALL NOT BE LIABLE TO CLIENT FOR ANY LOSSES REGARDLESS OF THEIR NATURE THAT ARE CAUSED BY OR RELATED TO A FORCE MAJEURE EVENT.

(c) THE TOTAL LIABILITY OF EACH PARTY AND ITS AGENTS TO THE OTHER PARTY OR TO ANY THIRD PARTY FOR ALL LOSSES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE SERVICES SHALL NOT EXCEED THE TOTAL AMOUNT PAID BY THE CLIENT TO EPIQ FOR THE PARTICULAR SERVICES WHICH GAVE RISE TO THE LOSSES IN THE IMMEDIATE SIX (6) MONTHS PRIOR TO THE DATE OF THE ACTION GIVING RISE TO THE ALLEGED LOSS.

**10. Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

**11. Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

**12. General**

12.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

12.2 This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.

12.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law. Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights. Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

12.4 The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

12.5 Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

12.6 In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

12.7 Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

12.8 This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

12.9 All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.

12.10 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq</u>:

Epiq Corporate Restructuring, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn: Brad Tuttle

<u>If to Client</u>:

Glenwood Caverns Holdings, LLC
51000 Two Rivers Plaza Road
Glenwood Springs, Co 81601
Attn: Kayla Brager

<u>With a copy to</u>:

______________________________
______________________________
______________________________
Attn: __________________________

12.11 Invoices sent to Client should be delivered to the following address:

51000 Two Rivers Plaza Road
Glenwood Springs, Co 81601
Attn: Kayla Brager

Email: kbrager@glenwoodcaverns.com

12.12 The "Effective Date" of this Agreement is January 19, 2026

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ CORPORATE RESTRUCTURING, LLC**

________________________________

Name: Brad Tuttle
Title: General Manager

**COMPANY NAME**

By: Paul Maniscalco

Name: Paul D Maniscalco

Title: Chief Restructuring Officer

# SERVICES SCHEDULE

## SCHEDULES/STATEMENT PREPARATION

- Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"), including (as needed):

  - Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
  - Create and maintain databases for maintenance and formatting of Schedules and Statements data.
  - Coordinate collection of data from Client and advisors.
  - Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

## CLAIMS MANAGEMENT

- Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

- Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

- Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

- Process all proof of claim/interest submitted.

- Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

- Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

  - Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
  - Date received;
  - Claim number assigned; and
  - Asserted amount and classification of the claim.

- Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

- Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

- Implement necessary security measures to ensure the completeness and integrity of the claims registers.

- Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

- Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.

**NOTICING**

- Prepare and serve required notices in these Chapter 11 cases, including:

    - Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

    - Notice of any auction sale hearing;

    - Notice of the claims bar date;

    - Notice of objection to claims;

    - Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

    - Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

- After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

- Update claim database to reflect undeliverable or changed addresses.

- Coordinate publication of certain notices in periodicals and other media.

- Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

**BALLOTING/TABULATION**

- Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

  - Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

  - Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

  - Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

  - Coordinate distribution of solicitation documents.

  - Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

  - Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

  - Receive and examine all ballots and master ballots cast by voting parties. Date- stamp the originals of all such ballots and master ballots upon receipt.

  - Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

  - Undertake such other duties as may be requested by the Client.

**CALL CENTER**

- Provide state-of-the-art Call Center facility and services, including (as needed):

  - Create frequently asked questions, call scripts, escalation procedures and call log formats.
  - Record automated messaging.
  - Train Call Center staff.
  - Maintain and transmit call log to Client and advisors.

**MISCELLANEOUS**

- Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

- Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

- Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

- Provide temporary employees to the Clerk's Office to process claims, as necessary.

# PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $85.00 – $165.00 |
| Project Managers/Consultants/ Directors | $170.00 – $185.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $190.00 |
| Executives | No Charge |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.10 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFERRED RATES |
| E-Mail Noticing | WAIVED FOR MSL* |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Creditor/Data Records, Maintenance & Security | $0.10 per record/month |
| Electronic Imaging | $0.10 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| Jump Drive (Mass Document Storage) | Quoted at time of request |

## ON-LINE CLAIM FILING SERVICES

| | |
|---|---|
| On-Line Claim Filing | NO CHARGE |

---

1 Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.

*Quoted at time of request for high volume blasts to all creditors

## CALL CENTER RATES

| | |
|---|---|
| Standard Call Center Setup | NO CHARGE |
| Call Center Operator | $65 per hour |
| Voice Recorded Message | $0.34 per minute |

## OTHER SERVICES RATES

| | |
|---|---|
| Custom Software, Workflow and Review Resources | Quoted at time of request |
| Strategic Communication Services | Quoted at time of request |
| Escrow Services | Quoted at time of request /competitive rates |
| Securities Exchange / ATOP Event | Quoted at time of request |
| eDiscovery | Quoted at time of request, bundled pricing available |
| Virtual Data Room -- Confidential On-Line Workspace | Quoted at time of request |
| Disbursements -- Check and/or Form 1099 | Quoted at time of request |
| Disbursements -- Record to Transfer Agent | Quoted at time of request |

# EXHIBIT B

## WARSO DECLARATION

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Glenwood Caverns Holdings LLC[1], | Case No. 26-10166 (LSS) |
| Debtor. | |

**DECLARATION OF ALEXANDER WARSO IN SUPPORT OF APPLICATION OF THE DEBTOR FOR ENTRY OF AN ORDER PURSUANT TO 28 U.S.C. § 156(C), 11 U.S.C. § 105(A), BANKRUPTCY RULE 2002(F), AND LOCAL RULE 2002-1(E), AUTHORIZING APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT, EFFECTIVE AS OF THE PETITION DATE**

I, Alexander Warso, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information, and belief:

1. I am a Consulting Director with Epiq Corporate Restructuring, LLC ("Epiq"), a chapter 11 administrative services firm, whose offices are located at 777 3rd Avenue, 12th Floor, New York, NY 10017. I am properly authorized to submit this declaration ("Declaration"), made in support of the *Application of the Debtor for Entry of an Order Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), Bankruptcy Rule 2002(f), and Local Rule 2002-1(e), Authorizing Appointment of Epiq Corporate Restructuring, LLC as Claims and Noticing Agent, Effective as of the Petition Date* ("Application")[2]. Aside from instances where otherwise noted I have personal knowledge of the matters set forth herein and, if called and sworn as a witness, I could and would testify competently thereto.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Glenwood Caverns Holdings LLC (6861). The location of the Debtor's headquarters is 51000 Two Rivers Plaza Road, Glenwood Springs, CO 81601.

[2] Capitalized terms used herein but otherwise not defined shall have the same meanings attributed to them in the Application.

2. Epiq is a leading chapter 11 administrator that has significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has been the official claims and noticing agent in numerous cases that vary in size and complexity, including the following cases that were filed in this District: *See, e.g., In re Tonopah Solar Enegy, LLC*, No. 26-10060 (JKS) (Bankr. D. Del. Jan. 23, 2026); *In re Flexshopper, Inc.*, No. 25-12254 (LSS) (Bankr. D. Del. Dec. 30, 2025); *In re Clearside Biomedical, Inc.*, No. 25-12109 (TMH) (Bankr. D. Del. Nov. 25, 2025); *In re GBI Services, LLC*, No. 25-12089 (CTG) (Bankr. D. Del. Nov. 25, 2025); *In re Navidea Biopharmaceuticals, Inc.*, No. 25-11779 (JKS) (Bankr. D. Del. Oct. 8, 2025); *In re Pinstripes Holdings, Inc.*, No. 25-11677 (KBO) (Bankr. D. Del. Sept. 10, 2025); *In re Walker Edison Holdco LLC*, No. 25-11602 (TMH) (Bankr. D. Del. Aug, 29, 2025); *In re Wag! Grouop Co.*, No. 25-11356 (TMH) (Bankr. July 22, 2025); *In re Mosaic Companies LLC*, No. 25-11296 (CTG) (Bankr. D. Del. July 11, 2025); *In re Alachua Gov't Servs.*, No. 25-11289 (JKS) (Bankr. D. Del. July 11, 2025); *In re Bedmar, LLC*, No. 25-11025 (JKS) (Bankr. D. Del. June 11, 2025); *In re Synthego Corp.*, No. 25-10823 (MFW) (Bankr. D. Del. May 8, 2025); *In re Royal Interco, LLC*, No. 25-10674 (TMH) (Bankr. D. Del. Apr 10, 2025); *In re Tupperware Brands Corp.*, No. 24-12156 (BLS) (Bankr. D. Del. Sept. 20, 2024); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Aug 7, 2024); *In re In re Meier's Wine Cellars Acquisition, LLC*, No. 24-11575 (MFW) (Bankr. D. Del. July 25, 2024); *In re Salt Life Beverage, LLC*, No. 24-11468 (LSS) (Bankr. D. Del. June 30, 2024); In re Solar Biotech, Inc., No. 24-11402 (LSS) (Bankr. D. Del. June 23, 2024); *In re Mountain Sports LLC*, No. 24-11385 (MFW) (Bankr. D. Del. June 18, 2024); *In re iSun, Inc.*, No. 24-11144 (TMH) (Bankr. D. Del. June 3, 2024); *In re Ambri Inc.*, No. 24-10952 (LSS) (Bankr. D. Del. May 5, 2024); *In re Casa Systems, Inc.*, No. 24-10695 (KBO) (Bankr. D. Del. Apr. 3, 2024);

*In re Pride Group Holdings Inc.*, No. 24-10632 (CTG) (Bankr. D. Del. Apr. 1, 2024); *In re Airspan Network Holdings Inc.*, No. 24-10621 (TMH) (Bankr. D. Del. Mar. 31, 2024); *In re Charge Enterprises, Inc.*, No. 24-10349 (TMH) (Bankr. D. Del. Mar. 7, 2024); *In re Direct Orthopedic Care*, No. 24-10279 (JKS) (Bankr. D. Del. Feb. 21, 2024); In re Smallhold, Inc., No. 24-10267 (CTG) (Bankr. D. Del. Feb. 18, 2024); *In re Sientra, Inc.*, No. 10245 (JTD) (Bankr. D. Del. Feb. 12, 2024); *In re Burgess BioPower, LLC*, No. 24-10235(LSS) (Bankr D. Del. Feb. 9, 2024); *In re Terraform Labs Pte. Ltd*, No. 24-10070 (BLS) (Bankr. D. Del. Jan. 29, 2024).

3. In its capacity as agent and custodian of court records pursuant to 11 U.S.C. § 156(c), Epiq will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the services specified in the Application and the Claims Administration Agreement, and, at the Debtor's request, any related administrative, technical, and support services as specified in the Application and the Claims Administration Agreement. In performing these services, Epiq will charge the Debtor the rates set forth in the Claims Administration Agreement, which is attached as **Exhibit 1** to the Proposed Order. Pursuant to the Application and the Claims Administration Agreement, Epiq will perform the Claims and Noticing Services for the Debtor in this chapter 11 case.

4. Subject to Court approval, the Debtor has agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. § 156(c) and Local Rule 2002-1(e), in accordance with the terms and conditions of the Claims Administration Agreement. Payments are to be based upon the submission of a billing statement by Epiq to the Debtor after the end of each calendar month which includes a detailed listing of services and expenses. Epiq has received a $20,000 retainer from the Debtor and will first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $20,000 and, thereafter, to hold the

retainer as a security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services outlined in the Application.

5. Epiq represents the following with regard to its disinterestedness:

a. Epiq is not a creditor of the Debtor;

b. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c. By accepting employment in this chapter 11 case, Epiq waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

d. In its capacity as the Claims and Noticing Agent this chapter 11 case, Epiq will not be an agent of the United States and will not act on behalf of the United States;

e. Epiq will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f. Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

g. In its capacity as Claims and Noticing Agent in this chapter 11 case, Epiq will not intentionally misrepresent any fact to any person;

h. Epiq shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i. Epiq will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j. None of the services provided by Epiq as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

6. In addition to the disinterestedness representations noted above, I caused a list of identified potential parties in interest in this chapter 11 case to be submitted to our conflicts system for review. The list of potential parties in interest was provided by the Debtor. Epiq is not aware of any relationship that would present a disqualifying conflict of interest.

7. To the best of my knowledge, none of Epiq's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, any attorney known by Epiq to be employed by the U.S. Trustee or are equity security holders of the Debtor.

8. Based solely upon information provided to me by the Debtor and to the best of my knowledge, except as provided herein, neither Epiq nor any of its professionals has any materially adverse connection to the Debtor, its creditors, or other relevant parties. Epiq may have relationships with certain of Debtor's creditors, as vendors or in connection with cases in which Epiq serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for other chapter 11 debtors.

9. Epiq is a wholly owned subsidiary of Epiq Systems, Inc., which is corporate parent to certain companies that provide integrated technology products and services to the legal profession for electronic discovery, class action settlements, financial transactions, chapter 7 and 13 bankruptcy, litigation, and regulatory compliance. Given the legal and operational separateness of Epiq from its affiliates and the administrative nature of the services performed by such companies, Epiq does not believe that a conflict would arise solely from any relationship or claim of an Epiq affiliate or its corporate parent.

10. Epiq Systems, Inc. is a wholly owned subsidiary of Document Technologies, LLC ("DTI"), a global legal process outsourcing company, which is an ultimate wholly owned subsidiary of DTI Topco, Inc. ("DTI Topco"). DTI Topco is a privately-held entity with majority ownership held by OMERS Administration Corporation ("OAC"), the administrator of the OMERS pension funds, and managed by OMERS Private Equity Inc. ("OPE", which together with OAC are referred to as "OMERS"), and funds managed by Harvest Partners, LP ("Harvest"), a leading private equity investment firm.

11. Neither OMERS nor Harvest are currently identified on the Potential Parties in Interest list. However, the following disclosure is made out of an abundance of caution and in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

12. Designees of OMERS and Harvest are members of the Board of Directors of DTI Topco (the "Parent Board Designees"). No designees of OMERS or Harvest are members of the Board of Directors of DTI or Epiq, or any other subsidiaries of DTI. Further, Epiq has the following restrictions in place (collectively, the "Barrier"): (i) prior to the Debtor commencing this chapter 11 case, Epiq did not share the name or any other information identifying the Debtor with OMERS, Harvest, or the Parent Board Designees; (ii) Epiq has not and will not furnish any material nonpublic information about the Debtor to DTI, DTI Topco, OMERS, Harvest, or the Parent Board Designees; (iii) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work on Epiq client matters or have access to Epiq client information, client files, or client personnel; (iv) no DTI, DTI Topco, OMERS or Harvest personnel, including the Parent Board Designees, work in Epiq's offices; (v) other than the Parent Board Designees, Epiq operates independently from DTI, DTI Topco, OMERS and Harvest, including that it does not share any employees, officers or other management with OMERS or Harvest, has separate offices in separate buildings, and has separate IT systems; and (vi) no Epiq executive or employee is a director, officer or employee of OMERS or Harvest (or vice versa, other than the Parent Board Designees).

13. Epiq has searched the names of DTI, DTI Topco, OMERS and Harvest against the Debtor and the Potential Parties in Interest list provided by the Debtor. Based solely on the foregoing search, Epiq has determined, to the best of its knowledge, that there are no connections. Because of any applicable securities laws and the fact that Epiq operates independently from DTI,

DTI Topco, OMERS and Harvest, prior to the Petition Date, Epiq was unable to further investigate with either OMERS or Harvest, to the extent necessary, any potential or actual connection between either OMERS or Harvest and the Debtor and the Potential Parties in Interest.

14. Epiq has working relationships with certain of the professionals retained by the Debtor and other parties herein, but such relationships are completely unrelated to this chapter 11 case. Epiq has represented, and will continue to represent, clients in matters unrelated to this chapter 11 case, and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to this chapter 11 case.

15. Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this chapter 11 case. If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this chapter 11 case.

16. Neither Epiq nor its affiliates are party to any agreements where it/they receive(s) consideration in exchange for transferring information derived from its role as a claims agent under 28 U.S.C. § 156(c) to non-client third parties.

17. Based on the foregoing, I believe Epiq is a "disinterested person" as defined in 11 U.S.C. § 101(14). In addition, to the best of my knowledge, neither Epiq nor any of its partners or employees hold or represent any interest materially adverse to the Debtor's estate with respect to any matter upon which Epiq is engaged.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 9, 2026

*/s/ Alexander Warso*
Alexander Warso
Consulting Director, Epiq Corporate
Restructuring, LLC