**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>Glenwood Caverns Holdings LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-13137-KHT |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE DEBTOR'S PLAN, (II) AUTHORIZING BID PROTECTIONS AND AUTHORIZING THE DEBTOR TO ENTER INTO A STALKING HORSE AGREEMENT, (III) SCHEDULING AN AUCTION AND RELATED DATES THERETO, (IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), hereby moves (the "Motion") for:

A. entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bid Procedures Order"),

i. approving the procedures, substantially in the form attached to the Bid Procedures Order as **Exhibit 1** (the "Bid Procedures"),[2] in connection with a plan of reorganization, for the sale or sales of all or substantially all of the Debtor's assets or 100% of the equity interests in the reorganized Debtor through a stock purchase transaction (either constituting a "Transaction");

ii. authorizing the Bid Protection for the Stalking Horse Bidder, if one is selected;

iii. scheduling related bid deadlines and an auction (the "Auction");

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Glenwood Caverns Holdings LLC (6861). The location of the Debtor's headquarters is 51000 Two Rivers Plaza Road, Glenwood Springs, CO 81601.
[2] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the Bid Procedures.

iv. approving procedures (the "Assumption and Assignment Procedures") related to the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (the "Assumed Contracts"), and certain related notice, including the form and manner of cure notice substantially in the form attached to the Bid Procedures Order as **Exhibit 2** (the "Assumption and Assignment Notice"); and

v. scheduling hearing and related proceedings on confirmation of the Debtor's soon-to-be filed plan of reorganization, and granting related relief.

In support of the Motion, the Debtor relies upon the *Declaration of Paul Maniscalco in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") (Docket No. 10). In further support of the Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

1. As the Debtor reported to the Court at the recent status conference, the Debtor has been actively soliciting interest for acquirors of the Debtor's assets or equity through a plan of reorganization. The seasonality of the Debtor's business significantly impacts the level of interest for potential acquirors; and, with the high season upon the Debtor, accordingly puts time pressure on the Debtor. The Debtor had announced its intention to submit papers, including a Combined Plan and Disclosure Statement for a transaction with a stalking horse, for consideration at a time held for bid procedures next week, May 27, 2026.

2. However, more than one interested stalking horse has engaged and parties are spending time and resources developing stalking horse bids. Given the state of discussions, the Debtor, in its business judgment, thought selection of a specific stalking horse at this time would be premature. The Debtor anticipates selecting a stalking horse in the near future and proposing a plan in connection therewith. To keep the process moving and provide clarity to other bidders, the Debtor respectfully submits this Motion in order to set procedures and bid requirements, grant authority for standard stalking horse bid protections, and establish a clear schedule.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Colorado (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4. The legal predicates for the relief requested herein are sections 105(a), 363(b), 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9008, and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2081-2, 6004-1, and 9013-1 of the Local Bankruptcy Rules (the "Local Rules").

5. The Debtor confirms its consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### I. The Chapter 11 Case

6. On February 9, 2026 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7. The Debtor continues to manage its business as debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8. Additional information regarding the Debtor and this Chapter 11 Case, including the Debtor's business operations, capital structure, financial condition, and the reasons for and objectives of this Chapter 11 Case, is set forth in the First Day Declaration, which is incorporated by reference as if fully set forth herein.

## II. Proposed Sale Process and Timeline

9. On March 4, 2026, the Debtor engaged Hilco Corporate Finance LLC ("Hilco"), as investment banker, to assist the Debtor in its pursuit of a sale of its equity or all or substantially all of its assets. To that end, Hilco has contacted more than 170 potential counterparties. Moreover, Hilco has prepared marketing materials and a virtual data room containing files with certain information regarding the Debtor's business operations, finances, material contracts, and other pertinent documents. The Debtor and Hilco prepared a form Nondisclosure Agreement and over 25 potentially interest parties have executed and delivered such agreements to date. The Debtor has also arranged site visits. This process is ongoing.

10. Through this Motion, the Debtor is seeking approval of the Bid Procedures to establish an open process for the solicitation, receipt, and evaluation of bids for acquisition of the Debtor's assets or of the Reorganized Debtor's equity pursuant to a plan of reorganization, all on a timeline that allows for an expeditious exit from Chapter 11. The Debtor believes that the Bid Procedures described herein will best facilitate a potential auction, thereby maximizing recoveries for all creditors, by providing substantial flexibility with respect to the number and structure of any transactions.

11. Given the circumstances, the marketing process and the proposed Bid Procedures provide appropriate time for the Debtor to finish marketing the assets, receive and evaluate Bids, select a Stalking Horse Bid, and hold an Auction (if necessary) to determine the highest or otherwise best Bid(s), particularly in light of the seasonality of the Debtor's business and the optimal timing to solicit interest.

12. The timeline set forth in the Bid Procedures was calculated to balance the need to provide adequate notice to parties in interest and potential bidders with the need to run an

expeditious and efficient sale process, recognizing that Hilco's process is well underway. The Bid Procedures are designed to generate the highest or otherwise best available recoveries to the Debtor's stakeholders by encouraging prospective Bidders to submit competitive, value-maximizing proposals. Specifically, through this Motion, the Debtor respectfully requests that the Court approve the following timeline:

| Date[3] | Event |
|---|---|
| At or prior to the Bid Procedures Hearing | Bid Procedures Motion Objection Deadline |
| May 27, 2026 at 10:00AM | Bid Procedures Hearing |
| [June 8, 2026] | Deadline to File Assumption and Assignment Notice |
| [June 10, 2026] | Deadline to Submit Stalking Horse Bid |
| [June 15, 2026] | Deadline to Designate Stalking Horse Bidder if selected by the Debtor |
| [June 19, 2026] | Deadline to Object to Stalking Horse Bidder Designation |
| [June 22, 2026] | Cure/Assignment Objection Deadline |
| [July 7, 2026] | Deadline to Object to Plan Confirmation |
| [July 10, 2026] | Deadline to Submit Qualified Bids |
| [July 15, 2026] | Auction (as necessary) |
| Promptly After Auction | Deadline to File Notice of Successful Bidder and Backup Bidder(s) |
| [July 20, 2026] | Adequate Assurance Objection Deadline |
| [July 23, 2026] | Confirmation Hearing |

## <u>PROPOSED BID PROCEDURES</u>

### I. The Bid Procedures and Auction Process

13. The Debtor designed the Bid Procedures to promote participation and active bidding, and to ensure that the Debtor receives the highest or otherwise best offer for the Assets.

[3] All times are prevailing Mountain Time.

As such, the Debtor believes the timeline for consummating the Transaction process established pursuant to the Bid Procedures is in the best interest of its estate and all parties in interest.

14. The Bid Procedures describe, among other things, the requirements for prospective purchasers to participate in the bidding process, the availability and conduct of due diligence, the deadline for submitting a competing Bid, the method and factors for determining Qualified Bids, the criteria for selecting a Successful Bidder, and the non-exhaustive procedures for conducting an Auction if timely Qualified Bids are received.

15. The Debtor has actively engaged more than one party that has expressed interest in acting as a stalking horse bidder. The Debtor is not yet prepared to select a proposed stalking horse; however, the Debtor believes it important to move the process forward and provide dates and requirements for interested bidders. Accordingly, by this Motion, the Debtor requests authority to select a Stalking Horse Bidder, in its business judgment, and award the Stalking Horse Bidder typical bid protections, in particular, a breakup fee not to exceed three percent (3%) of the Purchase Price outlined in the Stalking Horse Agreement.

16. The Debtor refers the Court and parties to the Bid Procedures, attached to the Bid Procedures Order as **Exhibit 1**, for the details of the proposed procedures. The proposed procedures follow a recognized pattern. Among other requirements, bidders (1) must execute the Nondisclosure Agreement and obtain access to the data room, (2) should provide a nonbinding indication of interest outlining general consideration and deal structure, and any other material terms, and (3) will be required to demonstrate financial wherewithal.

17. Competitive bidders will be required to submit binding bids as set forth in the Bid Procedures, accompanied by a deposit of ten percent (10%) of the purchase price at the bid deadline. The Bid should specify whether it will propose restructure of the secured claim of

Community Banks of Colorado, the Debtor's prepetition secured lender (the "Prepetition Secured Lender"). If it does, the Potential Bidder must provide information sufficient for the Prepetition Secured Lender to evaluate the proposal, including the equity commitments associated with the Bid or offered credit support. If it does not, the Bid must be accompanied by evidence of the Potential Bidder's financial wherewithal to consummate the Transaction set forth in its Bid with cash on hand.

18. Other bid requirements are as set forth in the proposed Bid Procedures, including agreement to participate in the Auction according to its rules.

19. The Debtor proposes an auction, if necessary, a week after bids are due. This will provide time for the Debtor and impacted parties to clarify and negotiate with bidders prior to the start of the Auction, so conditions for a robust Auction are maximized.

20. Importantly, the Bid Procedures recognize the Debtor's fiduciary obligation to maximize value, and, as such, do not impair the Debtor's ability to consider all qualified bid proposals, and preserves the Debtor's right to modify the Bid Procedures as necessary or appropriate to maximize value for its estate. Moreover, through the Bid Procedures, the Debtor has agreed to provide substantial information about the ongoing process to its stakeholders to ensure that they are apprised of the status and determinations related to the Transaction.

## II. Form and Manner of Notice

21. As soon as practicable after entry of the Order, the Debtor will post the Transaction Notice on its restructuring website, https://dm.epiq11.com/case/glq/info (the "Case Website"). The Transaction Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Transaction, including the date, time, and place of the Auction (if one is held) and the Bid Procedures and the dates and deadlines related thereto.

22. In addition, as the proposed transaction will become incorporated into and effectuated pursuant to the Debtor's plan, parties will have additional notice associated with the plan confirmation process and the Debtor's proposed Combined Plan and Disclosure Statement.

**III. Assumption and Assignment Procedures**

23. In connection with the Transaction, the Debtor may seek to assume and assign one or more executory contracts or unexpired leases to a successful bidder, as selected by such bidder, in accordance with the Assumption and Assignment Procedures. The Assumption and Assignment Procedures are designed to, among other things, govern the Debtor's provision of Adequate Assurance Information and the provision of notice to all counterparties.

24. Because the Bid Procedures Order sets forth the Assumption and Assignment Procedures in detail, they are not restated herein. Generally, however, the Assumption and Assignment Procedures: (i) outline the process by which the Debtor shall serve notice to all Assigned Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right, and the procedures, to object thereto, and (ii) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Assigned Contracts to the extent necessary.

## BASIS FOR RELIEF

**I. The Bid Procedures are Fair, Designed to Maximize the Value Received for the Assets and/or Equity, and Consistent with the Debtor's Reasonable Business Judgment**

25. Courts uniformly recognize that procedures to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore, are appropriate in the context of bankruptcy transactions. *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 537 (3d Cir. 1999); *In re Fin'l News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("Court-imposed rules for the disposition of assets

. . . [should] provide an adequate basis for comparison of offers."); *see also Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (stating bidding procedures "encourage bidding and . . . maximize the value of the Debtors' assets").

26. The Debtor believes that the Bid Procedures will provide an orderly and uniform mechanism by which interested buyers and investors can submit offers for the Debtor's Equity or all or substantially all of the Debtor's Assets, and will ensure a competitive and fair bidding process. The Debtor also believes that the Bid Procedures will promote active bidding from seriously interested parties and will confirm the best and highest offer reasonably available. The Bid Procedures will allow the Debtor to conduct the Auction, subject to the terms of the Bid Procedures, in a controlled, fair, and open manner that will encourage participation by financially capable bidders that demonstrate the ability to close a Transaction. The Debtor believes that the Bid Procedures will encourage bidding, are consistent with other procedures routinely approved by courts in this and other districts, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.

27. Courts approve procedures substantially similar to the proposed Bid Procedures, including procedures providing for transaction timelines consistent with (or more accelerated) than the timeline proposed herein. *See, e.g., In re Mabvax Therapeutics Holdings, Inc.*, No. 19-10603 (CSS) (Bankr. D. Del. Apr. 8, 2019) (Docket No. 78) (approving bidding procedures with a bid deadline 18 days after entry of bidding procedures order); *In re Things Remembered, Inc.*, No. 19-10248 (CSS) (Bankr. D. Del. Mar. 13, 2019) (Docket No. 100) (approving bidding procedures with bid deadline 7 days after entry of order and auction scheduled for 26 days after entry of order); *In re Sequential Brads Group, Inc.*, No. 21-11194 (JTD) (Bankr. D. Del. Sept. 24, 2021) (Docket No.

138) (approving bidding procedures with bid deadline 30 days after entry of order allowing for bids for some or substantially all assets of the debtor); *In re Charlotte Russe Holding, Inc.*, No. 19-10210 (LSS) (Bankr. D. Del. Feb. 21, 2019) (Docket No. 199) (approving bidding procedures with bid deadline 10 days after entry of order and auction scheduled for 29 days after entry of order).

28. The timeline for Bids is appropriate here as the process has been ongoing, with Potential Bidders now awaiting guidance as to the specific process and procedures for submitting bids.

**II. The Requested Authority Regarding Stalking Horse Bid Protections is Reasonable**

29. The use of a stalking horse in an auction process is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Official Comm. of Unsecured Creditors v. Interforum Holding LLC*, 2011 WL 2671254, No. 11-cv-219, at *1 n. 1 (E.D. Wis. July 7, 2011). As a result, stalking horse bidders virtually always require bidding protections as an inducement for "setting the floor at auction, exposing [their] bid[s] to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Id.* (citation omitted). The use of bidding protections has become an established practice in chapter 11 cases.

30. Bidding protections are a customary and, in many cases, necessary component of significant sales conducted in chapter 11: Bid Protections "are important tools to encourage bidding and to maximize the value of the debtor's assets . . . In fact, because the directors of a corporation have a duty to encourage bidding, [bid protections] can be *necessary* to discharge the directors' duties to maximize value." *Integrated Res.*, 147 B.R. at 659–60. Specifically, bid protections "may be legitimately necessary to convince a 'white knight' to enter the bidding by

providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (citation and quotations omitted); *see also Integrated Res.*, 147 B.R. at 660–61 (noting bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

31. As a result, courts routinely approve such bid protections where a proposed fee or reimbursement provides a benefit to the estate. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) ("In other words, the allowability of [bid protections], like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate."). The approval of the Bid Protection is in the best interest of the Debtor's estate and its creditors. The Debtor may grant Bid Protections to induce a Stalking Horse to establish a floor for further bidding that may increase the consideration given in exchange for the Debtor's Equity or all or substantially all its Assets, which will inure to the benefit of the Debtor's estate.

32. Any Bid Protections granted within approved parameters, therefore, (a) are an actual and necessary cost and expense of preserving the Debtor's estates within the meaning of Bankruptcy Code sections 503(b) and 507(a)(2), (b) are commensurate to the real and material benefits conferred upon the Debtor's estate, and (c) are fair, reasonable, and appropriate, including in light of the size and nature of the proposed transaction, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder.

33. If the Bid Protection is ultimately to be paid, it will necessarily be because the Debtor has received higher or otherwise superior offers for its Equity or Assets. In short, the proposed Bid Protection is fair and reasonable under the circumstances because it constitutes a

"fair and reasonable percentage of the proposed purchase price" and is "reasonably related to the risk, effort, and expenses of the prospective purchaser." *Integrated Res.*, 147 B.R. at 662.

## III. The Assumption and Assignment Procedures are Appropriate and Should be Approved

34. The proposed Assumption and Assignment Procedures provide notice to each impacted counterparty of the proposed cure, and, in connection with plan confirmation, an opportunity to be heard on issues impacting them. The proposed Assumption and Assignment Procedures are modeled on those used in sales in this District and others.

35. Consequently, the Debtor submits that the Assumption and Assignment Procedures are fair and reasonable, and respectfully requests that the Court approve such procedures and authorize the Debtor to assume and assign the Assumed Contracts in the manner provided for herein.

36. Pursuant to the Bid Procedures, the Potential Bidders are required to provide to the Debtor such financial and other information providing adequate assurance of future performance under any executory contracts and unexpired leases to be assumed pursuant to Bankruptcy Code section 365 in connection with the Transaction, in a form requested by the Debtor. As soon as reasonably practicable after a request is made, the Debtor shall provide such information to any counterparty that has requested, in writing, such information. Moreover, under the Assignment Procedures, the Non-Debtor Counterparties will have the opportunity to object to adequate assurance of future performance by the relevant Successful Bidder.

37. Accordingly, the Debtor submits that the assumption and assignment of the Designated Contracts as set forth herein should be approved pursuant to Bankruptcy Code section 365.

## CONCLUSION

38. The Bid Procedures provide the formal framework for a successful sale of the Debtor's assets or equity and have been structured to elicit value-maximizing bids. Among other things, the Bid Procedures: (a) set forth a clear, reasonable, and appropriate timeline; (b) establish the basic rules for submitting bids; and (c) authorize a standard Bid Protection for the Stalking Horse Bidder.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Bid Procedures Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Date: May 20, 2026

**BROWNSTEIN HYATT FARBER SCHRECK LLP**

*/s/ Michael J. Pankow*

Michael J. Pankow, #21212
Micah G. Hardy, #58705
675 15th Street, Suite 2900
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
Email: mpankow@bhfs.com
mhardy@bhfs.com

*Counsel for the Debtor and Debtor in Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2026, I electronically filed the foregoing **DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE DEBTOR'S PLAN, (II) AUTHORIZING BID PROTECTIONS AND AUTHORIZING THE DEBTOR TO ENTER INTO A STALKING HORSE AGREEMENT, (III) SCHEDULING AN AUCTION AND RELATED DATES THERETO, (IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF** via the Court's CM/ECF filing system and notice of the filing was served in accordance with Fed. R. Bankr. P. and L.B.R. on the following:

- **Daniel J. Caplis** dan@caplislaw.com
- **John Kellner** john@caplislaw.com
- **Micah Hardy** mhardy@bhfs.com; gpassow@bhfs.com
- **Alan Sweetbaum** asweetbaum@sweetbaumlaw.com; jstoller@sweetbaumlaw.com; ppierce@sweetbaumlaw.com; pcardi@sweetbaumlaw.com; amiller@sweetbaumlaw.com
- **Kari Lee Jones Dulin** kjd@trialproven.com; sabrina@trialproven.com; amy@trialproven.com
- **Kathryn Mailloux** ecr@ecf.epiqsystems.com
- **Michael J. Pankow** mpankow@bhfs.com; kasmith@bhfs.com
- **Andrew Stuart Miller** amiller@sweetbaumsands.com
- **David M. Miller** dmiller@spencerfane.com; David-miller-7513@ecf.pacerpro.com; mbir@spencerfane.com; jkallweit@spencerfane.com
- **Benjamin Sales** benjamin.a.sales.usdoj.gov
- **Nicholas Zluticky** nicholas.zluticky@stinson.com
- **US Trustee** USTPRegion19.DV.ECF@usdoj.gov
- **Jacob F. Hollars** jhollars@spencerfane.com

/s/ *Micah G. Hardy*
Micah G. Hardy, Associate