**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | Chapter 11 |
| Glenwood Caverns Holdings LLC,[1] | Case No. 26-13137-KHT |
| Debtor. | |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR DEBTOR'S PLAN, (II) AUTHORIZING CERTAIN BID PROTECTIONS AND AUTHORIZING THE DEBTOR TO ENTER INTO A STALKING HORSE AGREEMENT, (III) SCHEDULING AN AUCTION AND RELATED DATES THERETO, (IV) APPROVING CONTRACT ASSUMPTION AND ASSIGNMENT PROCEDURES, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession ("Debtor") for entry of an order (this "Order") (i) approving the Bid Procedures, substantially in the form attached to this Order as **Exhibit 1** (the "Bid Procedures"), (ii) approving certain Bid Protections and authorizing the Debtor in its discretion to select a bidder to act as the Stalking Horse Bidder and enter into a Stalking Horse Agreement, (iii) scheduling the Auction and related bid deadlines, (iv) approving the Assumption and Assignment Notice, substantially in the form attached to this Order as **Exhibit 2**, and (v) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the evidence in support of the Motion; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Glenwood Caverns Holdings LLC (6861). The location of the Debtor's headquarters is 51000 Two Rivers Plaza Road, Glenwood Springs, CO 81601.
[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable.

granted herein; and any objections to the Motion having been withdrawn with prejudice or overruled on the merits at the Hearing; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT FINDS:**

A. Jurisdiction and Venue. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334, and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

B. Bases for Relief. The bases for the relief requested in the Motion are: Bankruptcy Code §§ 105, 363, 365, 503, and 507; Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014; and Bankruptcy Local Rule 9013-1.

C. Notice of the Bid Procedures Motion. Good and sufficient notice of the Motion, the Bid Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein and in the Bid Procedures. The notice of the Motion and of the Hearing is reasonable and sufficient in light of the circumstances and nature of the relief requested in the Motion, and no other or further notice of the Motion or the Hearing is necessary. A reasonable and fair opportunity to object to the Motion and the relief granted in this Order has been afforded under the circumstances.

D. Bid Procedures. The Debtor has articulated good and sufficient reasons for authorizing and approving the Bid Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize value for the benefit of the Debtor's estate, its creditors, and other parties in interest. The Debtor, with the assistance of its advisors, is engaged in a fulsome marketing and transaction process to solicit and develop the highest or otherwise best

offer for the Debtor's Equity or some or all of the Debtor's Assets. The Bid Procedures are designed to build on that marketing and transaction process following entry of this Order.

E. Assumption and Assignment Procedures. The Assumption and Assignment Procedures are reasonably calculated to provide counterparties to the Assumed Contracts to be assumed, assumed and assigned, or transferred with proper notice of the intended assumption, assumption and assignment, or transfer of their Assumed Contracts, any cure amounts, and the Assumption and Assignment Procedures, and no other or further notice of such intention, the cure amounts, or the Assumption and Assignment Procedures shall be required.

**THEREFORE, IT IS ORDERED:**

1. All objections, statements, and reservations of rights to the relief granted herein that have not been withdrawn with prejudice, waived, or settled are overruled and denied on the merits with prejudice.

## I. Approved Process Timeline.

2. The below dates and deadlines regarding the Transaction are hereby established, subject to the right of the Debtor to modify the following dates provided notice is given in accordance with the terms of this Order. Interim dates not provided below will be established at a status conference with a date to be set.

| Date[3] | Event(s) |
|---|---|
| At or prior to the Bid Procedures Hearing | Bid Procedures Motion Objection Deadline |
| May 27, 2026 at 10:00AM | Bid Procedures Hearing |
| June 8, 2026 | Deadline to File Assumption and Assignment Notice |
| June 8, 2026 | Deadline to Submit Stalking Horse Bid |

[3] All times are prevailing Mountain Time.

| | |
|---|---|
| June 8, 2026 | Deadline to Designate Stalking Horse Bidder if selected by the Debtor |
| June 8, 2026 | Deadline for the Debtor to file a combined Plan and Disclosure Statement |
| June 22, 2026 | Deadline to Object to Stalking Horse Bidder Designation |
| TBD | Cure/Assignment Objection Deadline |
| July 17, 2026 | Deadline to Submit Qualified Bids |
| July 24, 2026 | Auction (as necessary) |
| Promptly After Auction | Deadline to File Notice of Successful Bidder and Backup Bidder(s) |
| July 27, 2026 | Deadline for the Debtor to file a Motion to Appoint a Consumer Privacy Ombudsman (if necessary) |
| July 31, 2026 | Deadline to Object to Plan Confirmation |
| TBD | Adequate Assurance Objection Deadline |
| August 14, 2026 | Confirmation Hearing |

3. ***Successful Bidder***. Following the Auction (if any), the Debtor will promptly file with the Court a notice (the "Notice of Successful Bidder") that will inform the Court of the results of the Auction. In the event that, in accordance with the Bid Procedures, no Auction is conducted and the Stalking Horse Bidder (if any) is named the Successful Bidder, the Debtor will file a notice to that effect, which will constitute the Notice of Successful Bidder. The Notice of Successful Bidder will identify: (i) the Successful Bidder; (ii) the amount and form of consideration to be paid by the Successful Bidder; (iii) the liabilities to be assumed by the Successful Bidder; and (iv) the Potential Assumed Contracts to be assumed by the Debtor and assigned or transferred to the Successful Bidder, or the Debtor's rights and interests therein sold and transferred to the Successful Bidder, as the case may be, in connection with the Transaction. The list of Assumed Contracts may be modified as set forth in the Plan. The Notice of Successful Bidder will also include similar information relating to the Back-Up Bidder(s) and the Back-Up Bid(s). The Debtor will file the Notice of Successful Bidder on the docket for this Chapter 11 Case as promptly as is reasonably practicable after the Auction.

## II. The Bid Procedures.

4. The Bid Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved, and the Debtor is authorized to solicit bids and conduct an Auction, if necessary, on the terms set forth in the Bid Procedures. The Bid Procedures shall govern the submission, receipt, and analysis of all bids, and any party desiring to submit a bid on the Debtor's Equity or some or all of the Debtor's Assets must do so strictly in accordance with the terms of the Bid Procedures and this Order. The Debtor is authorized to take all actions as are reasonably necessary or appropriate to implement the Bid Procedures.

5. Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Transaction, as set forth in the Bid Procedures, and an Auction (if any) shall be transcribed or recorded.

6. Pursuant to the Bid Procedures, the Debtor may: (a) determine which Qualified Bid is the highest or otherwise best offer for the Equity or applicable Assets; (b) at any time prior to entry of an Order of the Court approving the applicable Successful Bid, reject any Bid (other than the Stalking Horse Agreement, if any) that the Debtor determines is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bid Procedures, or (iii) contrary to the best interests of the Debtor's estate and its creditors; and (c) prior to conclusion of an Auction (if any) impose such other terms and conditions upon Qualified Bidders as the Debtor determines to be in the best interests of the Debtor's estate in this Chapter 11 Case.

7. If the Auction is cancelled, then the Debtor shall file a notice with the Court of such election within two (2) business days of the determination of such election by the Debtor.

8. Other than any Bid Protections approved for the Stalking Horse Bidder (if any) in accordance with the procedures set forth in this Order, no person or entity shall be entitled to any

expense reimbursement, breakup fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature in connection with such bid, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

**III. Approval of Procedures for Selection of Stalking Horse Bidder and Bid Protections.**

9. The Debtor is authorized to enter into a Stalking Horse Agreement, which may provide for payment of the Bid Protections, as set forth in the Bid Procedures, subject to notice and entry of an order approving the selection of the Stalking Horse Bidder as set forth herein. The Debtor may offer the Stalking Horse Bidder a break-up fee and expense reimbursement not to exceed three percent (3%) of the purchase price in the aggregate if such bidder does not include an insider. If the Stalking Horse Bidder includes an insider, then the Stalking Horse Bidder shall not be entitled to a break-up fee and instead be entitled to expense reimbursement on account of the actual, reasonable, and documented out-of-pocket expenses of the Stalking Horse Bidder incurred in connection with the Stalking Horse Agreement, in an aggregate amount not to exceed $250,000.00.

10. In the event that the Debtor designates a Stalking Horse Bidder and seeks to enter into a Stalking Horse Agreement on or prior to June 8, 2026 (prevailing Mountain Time) (the "Stalking Horse Supplement Deadline"), the Debtor shall file a supplement to the Motion (the "Stalking Horse Supplement") seeking approval of the same, and serve the Stalking Horse Supplement by email, where available, or otherwise by first class mail, with no less than three (3) business days' notice of the objection deadline (the "Stalking Horse Objection Deadline") to: (a) the U.S. Trustee and (b) those parties who have requested notice of all pleadings filed in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 (collectively, the "Stalking Horse Notice

Parties") with no further notice being required. After such notice and absent timely objection, the Debtor may submit an order to the Court under certification of counsel approving the selection of such Stalking Horse Bidder and the Bid Protections. If and to the extent necessary, the Debtor shall be entitled to set an expedited hearing on any objection to the designation of the Stalking Horse Bidder promptly following the expiration of any Stalking Horse Objection Deadline, subject to the availability of the Court.

## IV. The Assumption and Assignment Procedures.

11. The following Assumption and Assignment Procedures regarding the assumption and assignment of the Assumed Contracts proposed to be assumed by the Debtor and assigned to a Successful Bidder are approved:

a. **Cure Notice.** By June 8, 2026, the Debtor will file the Assumption and Assignment Notice (the "Assumption and Assignment Notice" or "Cure Notice") identifying the potential Assumed Contracts (such list, the "Cure Schedule"), and serve such notice on all Assumed Contract counterparties. The Cure Schedule attached to the Cure Notice served on each counterparty shall: (i) identify potential Assumed Contracts; (ii) identify the counterparty to such potential Assumed Contracts; (iii) list the proposed cure amounts, if any, that the Debtor believes must be paid to cure all defaults outstanding under each potential Assumed Contract (the "Cure Amounts") as of such date; (iv) include a statement that assumption and assignment of such potential Assumed Contracts is not required or guaranteed; and (v) inform such contract counterparty of the requirement to file any Cure/Assignment Objection (as defined below) by the Cure/Assignment Objection Deadline (as defined below). Service of the Cure Notice, including the Cure Schedule, upon a counterparty does not constitute an admission that a particular potential Assumed Contract is an executory contract or unexpired lease, or confirm that the Debtor is required to assume and/or assign such contract or lease.

b. **Cure and Assignment Objections.** A contract counterparty with any potential Assumed Contract listed on the Cure Schedule must file any objections to a proposed Cure Amount (a "Cure Objection") and/or any other objections to the assumption and assignment or transfer of any of the potential Assumed Contract (an "Assignment Objection") by June 22, 2026 (the "Cure/Assignment Objection Deadline"). Any Cure Objection and/or Assignment Objection must: (i) be in writing; (ii) comply with the

applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of this Chapter 11 Case; (iii) state with specificity the nature of the objection and, if the Cure Objection pertains to the proposed Cure Amounts, state the cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; (iv) include complete contact information for such contract counterparty (including address, telephone number, and email address); and (v) be filed with the Court and served upon the Objection Notice Parties[4] prior to the Cure/Assignment Objection Deadline; provided that the Debtor may modify the Cure/Assignment Objection Deadline with respect to any Contract Counterparty upon consultation with the Stalking Horse Bidder (if any) or the Successful Bidder, as applicable, by email confirmation.

c. **Adequate Assurance Objections.** A contract counterparty with any potential Assumed Contract listed on the Cure Schedule must file any objections to, as applicable, the Stalking Horse Bidder's or Successful Bidder's proposed form of adequate assurance of future performance (an "Adequate Assurance Objection" and, together with Cure Objections and Assignment Objections, "Contract Objections") no later than July 20, 2026.

d. **Effects of Filing a Cure Objection.** A properly filed Contract Objection will reserve such objecting party's rights against the Debtor only with respect to the assumption and assignment or transfer of the potential Assumed Contract at issue, and/or objection to the accompanying Cure Amounts, as set forth in the Contract Objection, but will not constitute an objection to the remaining relief requested in the Motion.

e. **Dispute Resolution.** Any Contract Objection that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court. To the extent that any Contract Objection cannot be resolved by the parties, any potential Assumed Contract subject to such Contract Objection shall be assumed and assigned or transferred only upon satisfactory resolution of the Contract Objection, to be determined in the Successful Bidder's reasonable discretion. To the extent a Contract Objection remains unresolved, the potential Assumed Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Contract Objection after notice and a hearing. If a Contract Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should not be an Assumed Contract, in which case the Successful Bidder will not be responsible for any Cure Amounts in respect of such contract. Notwithstanding the foregoing, if a Contract Objection is solely a Cure

[4] The Objection Notice Parties are (i) the United States Trustee for the District of Colorado; (ii) counsel to the Stalking Horse Bidder (if any); and (iii) persons who have filed a request for notice pursuant to Bankruptcy Rule 2002.

Objection (any such objection, a "Cure Dispute"), the applicable potential Assumed Contract may be assumed by the Debtor and assigned to the Successful Bidder provided that the cure amount the contract counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the contract counterparty) is deposited in a segregated account by the Debtor pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

f. **Supplemental Cure Notice.** If the Debtor discovers potential Assumed Contract(s) inadvertently omitted from the Assumption and Assignment Notice or the Successful Bidder identifies other potential Assumed Contract(s) that it desires to assume or assume and assign in connection with the Transaction, the Debtor may, after consultation with the Successful Bidder, at any time before the closing of the Transaction (if a Sale Transaction) or as set forth in the Plan (if an Equity Transaction), supplement the Cure Notice with previously omitted potential Assumed Contracts or modify a previously filed Cure Notice, including by modifying the previously stated Cure Amounts associated with any potential Assumed Contract (the "Supplemental Cure Notice").

g. **Objection to the Supplemental Cure Notice.** Any contract counterparty listed on a Supplemental Cure Notice may file an objection (a "Supplemental Cure/Assignment Objection") only if such objection is to the proposed assumption or assumption and assignment or transfer of the applicable potential Assumed Contract or the proposed Cure Amounts, if any. All Supplemental Cure/Assignment Objections must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of this Chapter 11 Case; (iii) state with specificity the nature of the objection and, if the Supplemental Cure/Assignment Objection pertains to the proposed Cure Amounts, state the cure amount alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; (iv) include complete contact information for such contract counterparty (including address, telephone number, and email address); and (v) be filed no later than 5:00 p.m. (prevailing Mountain Time) on the date that is the later of (x) seven days following the date of service of such Supplemental Cure Notice and (y) the Cure/Assignment Objection Deadline (the "Supplemental Cure/Assignment Objection Deadline"); provided that the Debtor may modify the Supplemental Cure/Assignment Objection Deadline with respect to any contract counterparty upon consultation with the Stalking Horse Bidder or the Successful Bidder, as applicable, by email confirmation.

h. **Dispute Resolution of Supplemental Cure Objection.** If a contract counterparty files a Supplemental Cure/Assignment Objection in a manner

that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtor shall seek an expedited hearing before the Court to determine the Cure Amounts, if any, and approve the assumption or transfer of the relevant potential Assumed Contracts. If there is no such objection, then the Sale Order shall constitute an order of the Court fixing the Cure Amounts and approving the assumption and assignment or transfer of any potential Assumed Contracts listed on a Supplemental Cure Notice, subject to such potential Assumed Contract's designation as an Assumed Contract. Notwithstanding the foregoing, if a Supplemental Cure/Assignment Objection relates solely to a Cure Dispute, the applicable potential Assumed Contracts may be assumed by the Debtor and assigned to the Successful Bidder provided that the cure amount the contract counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Contract Counterparty) is deposited in a segregated account by the Debtor pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

i. **No Cure Objections.** If there are no Contract Objections or Supplemental Cure/Assignment Objections, or if a contract counterparty does not file and serve a Contract Objection or a Supplemental Cure/Assignment Objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Amount, (i) the Cure Amounts, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any potential Assumed Contract or any other document, and (ii) the contract counterparty will be deemed to have consented to the assumption, assumption and assignment, or transfer of the potential Assumed Contract and the Cure Amounts, if any, and will be forever barred from objecting to the assumption, assumption and assignment, or transfer of such potential Assumed Contract and rights thereunder, including the Cure Amounts, if any, and from asserting any other claims related to such potential Assumed Contracts against the Debtor or the Successful Bidder, or the property of any of them.

12. Any objection to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assumed Contract must be filed with the Court no later than a date to be set by the Court at a future status conference.

13. The inclusion of a potential Assumed Contract on a Cure Notice or Supplemental Cure Notice will not (a) obligate the Debtor to assume, assume and assign, and/or transfer such potential Assumed Contract listed thereon nor obligate the Stalking Horse Bidder or any other

Successful Bidder to take assignment of such potential Assumed Contract; or (b) constitute any admission or agreement of the Debtor that such potential Assumed Contract is an executory contract or unexpired lease. Only those potential Assumed Contracts that are included on a schedule of assumed and assigned contracts attached to the definitive agreement of the Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement)—*i.e.* the Assumed Contracts—will be assumed and assigned or transferred to the Successful Bidder.

**V. Assumption and Assignment Notice and Related Relief.**

14. The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved. The Debtor shall file the Assumption and Assignment Notice by June 8, 2026, and serve it upon (a) the U.S. Trustee; (b) any party that has requested notice pursuant to Bankruptcy Rule 2002; (c) the Objection Notice Parties; (d) the applicable contract counterparties; and (e) any other party entitled to notice pursuant to the Court's *Order Granting Ex Parte Motion to Establish a Limited Notice List Pursuant to Local Bankruptcy Rule 2081-2* (Docket No. 183).

15. Nothing in this Order or the Bid Procedures shall be deemed a waiver of any rights, remedies, or defenses that any party (including the Debtor, the Stalking Horse Bidder, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law or any rights, remedies or defenses of the Debtor with respect thereto, including seeking relief from the Court with regard to the Auction, the Bid Procedures, the Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

16. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

18. The requirements set forth in Bankruptcy Local Rule 9013-1 are satisfied by the contents of the Motion.

19. Notwithstanding Bankruptcy Rules 6004(h) and 6006, to the extent applicable, this Order shall be immediately effective and enforceable upon entry hereof.

20. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May 27, 2026

United States Bankruptcy Court Judge

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: | Chapter 11 |
| Glenwood Caverns Holdings LLC,[1] | Case No. 26-13137-KHT |
| Debtor. | |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S EQUITY, OR ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS**

On February 9, 2026, the above-captioned debtor and debtor in possession (the "Debtor") filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This Chapter 11 Case is pending before the United Stated Bankruptcy Court for the District of Colorado (the "Court").

On May 27, 2026, the Court entered the *Order (I) Approving Bidding Procedures for Debtor's Plan, (II) Authorizing Bid Protections and Authorizing the Debtor to Enter into a Stalking Horse Agreement, (III) Scheduling an Auction and Related Dates Thereto, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* [Docket No. ●] (the "Bid Procedures Order"),[2] by which the Court approved the following procedures (the "Bid Procedures").

These Bid Procedures set forth the process by which the Debtor is authorized to solicit the highest or otherwise best bids (each, a "Bid") and conduct an auction (the "Auction") for the sale (the "Sale Transaction") of all or substantially all of the Debtor's assets (the "Assets") or any portion thereof, or 100% of the equity interests in the reorganized Debtor (the "Equity") through a stock purchase transaction (an "Equity Transaction," and together with a Sale Transaction, a "Transaction"). A Transaction will be implemented through a chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan"), pursuant to Bankruptcy Code section 1123.

**Copies of the Bid Procedures Order or other documents related thereto are available upon request to Epiq by emailing GlenwoodInfo@epiqglobal.com or visiting the Debtor's restructuring website at https://dm.epiq11.com/case/glq/info.**

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Glenwood Caverns Holdings LLC (6861). The location of the Debtor's headquarters is 51000 Two Rivers Plaza Road, Glenwood Springs, CO 81601.

[2] All capitalized terms used but not immediately defined shall have the meanings attributed to them elsewhere in these Bid Procedures, the Bid Procedures Motion, or the Bid Procedures Order, as applicable.

**Equity and/or Assets to be Auctioned**

These Bid Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer or combination of offers which in the aggregate will make the highest or otherwise best offer to purchase the Debtor's Equity or all or substantially all of the Debtor's Assets. The Debtor may consider bids from multiple bidders (including multiple bids submitted by the same bidder) in any combination for the Debtor's Equity, or all or substantially all of the Debtor's Assets.

The below is a table setting forth key dates and deadlines with respect to the Transaction process. Interim dates not provided below will be established at a status conference with a date to be set.

| Date[3] | Event(s) |
|---|---|
| At or prior to the Bid Procedures Hearing | Bid Procedures Motion Objection Deadline |
| May 27, 2026 at 10:00AM | Bid Procedures Hearing |
| June 8, 2026 | Deadline to File Assumption and Assignment Notice |
| June 8, 2026 | Deadline to Submit Stalking Horse Bid |
| June 8, 2026 | Deadline to Designate Stalking Horse Bidder if selected by the Debtor |
| June 8, 2026 | Deadline for the Debtor to file a combined Plan and Disclosure Statement |
| June 22, 2026 | Deadline to Object to Stalking Horse Bidder Designation |
| TBD | Cure/Assignment Objection Deadline |
| July 17, 2026 | Deadline to Submit Qualified Bids |
| July 24, 2026 | Auction (as necessary) |
| Promptly After Auction | Deadline to File Notice of Successful Bidder and Backup Bidder(s) |
| July 27, 2026 | Deadline for the Debtor to file a Motion to Appoint a Consumer Privacy Ombudsman (if necessary) |
| July 31, 2026 | Deadline to Object to Plan Confirmation |
| TBD | Adequate Assurance Objection Deadline |
| August 14, 2026 | Confirmation Hearing |

## I. Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity interested in a Transaction (a "Potential Bidder") must deliver or have previously delivered to the Debtor the following documents (collectively, the "Preliminary Bid Documents"):

[3] All times are prevailing Mountain Time.

a. an executed confidentiality and non-disclosure agreement (a "NDA") in form and substance acceptable to the Debtor;

b. a non-binding written indication of interest specifying, among other things, the type of proposed Transaction, if a Sale Transaction, the identity of the Assets to be acquired, the amount and type of consideration to be offered in connection with a proposed Transaction, and any other material terms to be included in a Bid by such party;

c. preliminary proof by the Potential Bidder of its financial wherewithal to close the proposed Transaction (which may include current audited or verified financial statements of, or verified financial commitments ("Financial Statements") obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be reasonably acceptable to the Debtor;

d. identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity, and any known connections the Potential Bidder has to the Debtor or its advisors, any statutory committee appointed in this case or its advisors, or any creditor or equity security interest holder of the Debtor; and

e. a list with the names and contact information for any financial, legal, and other advisors the Potential Bidder has engaged to assist in connection with the proposed Transaction.

The Debtor, in its sole discretion, may agree to waive some or all of the Potential Bidder requirements set forth above. Each Potential Bidder shall comply with all reasonable requests for information and access by the Debtor or its advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Transaction.

Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtor and its advisors may submit a Bid. The Debtor reserves the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

For the avoidance of doubt, the Stalking Horse Bidder (defined below) has fulfilled the Preliminary Bid Documents to the satisfaction of the Debtor.

## II. Obtaining Due Diligence Access.

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtor and its advisors shall be eligible to receive information and access to the Debtor's electronic data room and to additional non-public, non-privileged information regarding the Debtor. All information requests must be directed to the Debtor's

investment banker, Hilco Corporate Finance, LLC, Attn: Teri Stratton (tstratton@hilcocf.com), Sanjay Marken (smarken@hilcocf.com), and Jean-Paul Chiappini (jchiappini@hilcocf.com). The Debtor will provide to each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request, and the Debtor shall post substantially all written due diligence provided to any Potential Bidder to the Debtor's electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtor or a potential Transaction with any customer, supplier, or contractual counterparty of the Debtor without the prior written consent of the Debtor. The due diligence period will end on the Bid Deadline (as defined herein), provided that the Debtor may provide reasonable access to information reasonably requested by any Qualified Bidder (as defined below) after the Bid Deadline.

In connection with the provision of due diligence information to Potential Bidders, the Debtor shall not furnish any confidential information relating to the Debtor or a potential Transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives and only to the extent provided for in the NDA.

The Debtor and its advisors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; provided that the Debtor may decline to provide such information to Potential Bidders who, in the Debtor's business judgment, have not established, or who have raised doubt, that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Transaction. For any Bidder who is a competitor or customer of the Debtor or is affiliated with any competitors or customers of the Debtor, the Debtor reserves the right to withhold or modify any diligence materials that the Debtor determines is commercially sensitive or otherwise inappropriate for disclosure to such bidder.

A. Communications with Potential Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bid Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders shall be through Hilco Corporate Finance, LLC (via email shall be acceptable), Attn:

Teri Stratton (tstratton@hilcocf.com),
Sanjay Marken (smarken@hilcocf.com), and
Jean-Paul Chiappini (jchiappini@hilcocf.com).

B. Due Diligence from Potential Bidders (including Qualified Bidders).

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtor or its advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Transaction. Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtor to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

C. No Communications Among Potential Bidders.

Potential Bidders shall not communicate between or amongst other Potential Bidders, unless the Debtor has previously authorized such communication in writing. Should any Potential Bidder attempt to communicate directly with another Potential Bidder, such Potential Bidder, as applicable shall immediately inform, in writing, the Debtor's counsel and the Debtor's investment banker. The Debtor reserves the right, in its business judgment, to disqualify any Potential Bidders that have communications between and amongst themselves without the prior written consent of the Debtor (email acceptable).

## III. Bid Protection for the Stalking Horse Bidder.

Recognizing that the Stalking Horse Bidder has and continues to expend time, energy, and resources, and that the Stalking Horse Bidder provides a floor bid with respect to the Assets that it has offered to purchase, pursuant to the Bid Procedures Order, the Debtor is authorized, but not required, to provide a non-insider Stalking Horse Bidder a break-up fee and expense reimbursement in an amount not to exceed three percent (3%) of the purchase price under the Stalking Horse Agreement in the aggregate, in the event that the Debtor selects another bidder. If the Stalking Horse Bidder includes an insider, then the Stalking Horse Bidder shall only be entitled to expense reimbursement on account of the actual, reasonable, and documented out-of-pocket expenses of the Stalking Horse Bidder incurred in connection with the Stalking Horse Agreement, in an aggregate amount not to exceed $250,000.00 ("Bid Protection").

Any Bid submitted on or before the Bid Deadline by a party or parties other than the Stalking Horse Bidder must be in an amount that is sufficient to pay the Bid Protection and result in additional consideration to the Debtor's estate in the amount of at least $100,000.00 (as compared to the Purchase Price offered by the Stalking Horse Bidder), after payment of the Bid Protection.

## IV. Bid Requirements.

To be selected to acquire the Debtor's Equity, all or substantially all of the Debtor's Assets, or to be eligible to participate in the Auction, if applicable, a Potential Bidder must deliver to the parties set forth in Section V below a written, irrevocable, and binding Bid (a "Binding Bid") for a Transaction that must be determined by the Debtor in its business judgment, to satisfy each of the following conditions (collectively, the "Bid Requirements"):

a. **Purpose.** Each Potential Bidder must state that the Bid includes an offer by the Potential Bidder to acquire the Debtor's Equity or all or substantially all of the Debtor's Assets, and identify the Assets with reasonable specificity.

b. **Transaction Structure and Purchase Price.** Each Bid must clearly set forth the purchase price to be paid for the Debtor's Equity or some or all of the Debtor's Assets (the "Purchase Price") and must indicate the source of consideration, including funding commitments, and confirm that such consideration is not subject to any contingencies. The Bid should include a detailed sources and uses schedule. Each Bid shall also provide for appropriate treatment for the claims held by the Debtor's customers. The price must, at a minimum, provide for payment of all priority and administrative expenses claims, payment or assumption of the secured

claim of Community Banks of Colorado (the "Prepetition Secured Lender"). The Debtor will consider, among other factors, the value provided by a bid over and above the secured claim of the Prepetition Secured Lender.

c. **Bid Deposit.** Each Bid must be accompanied by a cash deposit equal to ten percent (10%) of the Purchase Price of the Bid (the "Good Faith Deposit"), which will be held in a segregated account identified by the Debtor.

d. **Committed Financing.** The Bid should specify whether it will propose restructure of the Secured Claim of the Prepetition Secured Lender. If it does, it must provide information sufficient for the Prepetition Secured Lender to evaluate the proposal, including the equity commitments associated with the Bid or offered credit support. If it does not, the Bid must be accompanied by evidence of the Potential Bidder's financial wherewithal to consummate the Transaction set forth in its Bid with cash on hand. Each Bid must include committed financing that is documented to the Debtor's satisfaction and demonstrates that the Potential Bidder has received sufficient debt and/or equity funding commitments to satisfy the Potential Bidder's Purchase Price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, or diligence, and shall have covenants and conditions reasonably acceptable to the Debtor in its sole discretion.

e. **Good Faith Offer.** Each Bid must constitute a good faith, bona fide offer to purchase the Debtor's Equity (upon confirmation of a Chapter 11 plan restructuring the Debtor's balance sheet) or some or all of the Debtor's Assets.

f. **Marked Plan or Draft Purchase Agreement.** Each Bid must be accompanied by clean and duly executed transaction documents including, at a minimum, a markup of the as-filed chapter 11 plan or a draft asset purchase agreement, including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the Transaction. The Debtor, in its business judgment, will determine whether any such amendments and modifications are materially more burdensome.

g. **No Contingencies.** A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following (a) financing contingencies, (b) shareholder, board of directors, or other approval, and/or (c) contingencies related to the outcome or completion of a due diligence review by the Potential Bidder.

h. **Binding and Irrevocable.** A Potential Bidder's Bid must be irrevocable unless and until the Debtor accepts a higher Bid and such Potential Bidder is not selected as the Back-Up Bidder (as defined herein).

i. **Joint Bids.** The Debtor will be authorized to approve joint Bids in its discretion on a case-by-case basis.

j. **Adequate Assurance Information.** Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtor, that such Potential Bidder (a) has the financial wherewithal and ability to consummate the acquisition of the Debtor's Equity or all or substantially all of the Debtor's Assets (the "Closing"), and (b) can provide adequate assurance of future performance in connection with the proposed Transaction. The Bid must also identify a person that parties may contact to obtain additional Adequate Assurance Information.

k. **Identity & Corporate Authority.** Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the acquisition of the Debtor's Equity or all or substantially all of the Debtor's Assets), and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the Transaction on the terms contemplated by the parties. A Bid must also fully disclose any connections or agreements with the Debtor, any known bidder, potential bidder, prospective bidder or Qualified Bidder (as defined herein), or any officer, director, or equity security holder of the Debtor.

l. **Authorization.** Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or a comparable governing body reasonably acceptable to the Debtor) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

m. **No Fees.** Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Transaction, and by submitting its Bid, is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under Bankruptcy Code section 503(b); provided that the Debtor is authorized in its discretion to provide the Bid Protection to the Stalking Horse Bidder in accordance with these Bid Procedures.

n. **Adherence to Bid Procedures.** By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bid Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

o. **Regulatory Approvals and Covenants.** A Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the applicable Transaction, if any, and the time period within which the Potential Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Plan term sheet and/or asset purchase agreement, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible).

p. **As-Is, Where-Is.** Each Bid must include a written acknowledgement and representation that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Debtor's Equity or some or all of the Debtor's Assets prior to making its offer, (b) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Debtor's Equity or all or substantially all of the Debtor's Assets in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Debtor's Equity or all or substantially all of the Debtor's Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Potential Bidder's markup of the chapter 11 plan.

q. **Time Frame for Closing.** A Bid by a Potential Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined herein), within a time frame acceptable to the Debtor.

r. **Consent to Jurisdiction.** The Potential Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtor's qualification of Bids, the Auction, the construction and enforcement of these Bid Procedures, the Plan, the Transaction documents, and the Closing, as applicable.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtor's discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtor's discretion, be deemed to be "Qualified Bidders."

No later than two (2) business days following the Bid Deadline, the Debtor shall determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction (if held). Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtor; provided, however, that if the Debtor receives a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtor may provide the Potential Bidder with the opportunity to remedy any deficiencies prior to the Auction. The Debtor may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Debtor's Equity or all or substantially all of the Debtor's Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bidder; provided that the Debtor also reserves the right to conduct more than one Transaction process or Auction with respect to non-overlapping material portions of the Debtor's Equity or all or substantially all of the Debtor's Assets).

## V. Bid Deadline.

Binding Bids must be received (via email shall be acceptable) by: (a) counsel to the Debtor, Brownstein Hyatt Farber Schreck, LLP, 675 15th Street, Suite 2900, Denver, CO 80202, Attn: Michael J. Pankow (mpankow@bhfs.com) and Micah G. Hardy (mhardy@bhfs.com); (b) the

Debtor's investment banker, Hilco Corporate Finance, LLC, Attn: Teri Stratton (tstratton@hilcocf.com), Sanjay Marken (smarken@hilcocf.com), and Jean-Paul Chiappini (jchiappini@hilcocf.com); and (c) the United States Trustee for the District of Colorado, 1961 Stout Street, Suite 12-200 Denver, Colorado 80294, Attn: Benjamin A. Sales (Benjamin.A.Sales@usdoj.gov); in each case so as to be actually received no later than 5:00 p.m. (prevailing Mountain Time) on July 17, 2026 (the "Bid Deadline").

## VI. Evaluation of Qualified Bids.

Prior to the Auction (if held), the Debtor and its advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtor's business judgment, the highest or otherwise best Bid, which Bid may be the Stalking Horse Bid (the "Starting Bid"). If applicable, the Starting Bid shall include, at a minimum, the amount provided for in the Stalking Horse Agreement, plus the amount of the Bid Protection, plus $100,000.00. In addition, prior to the selection of the Successful Bidder, the Debtor may, in the Debtor's business judgment, engage in negotiations with bidders with respect to their Bids. For the avoidance of doubt, the Debtor may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction (if held) if each such Qualified Bid contemplates the purchase of different Assets and/or the Equity. In conducting the evaluation of the Qualified Bids, the Debtor will take into consideration the following non-exclusive factors:

a. the amount of the Purchase Price of the Qualified Bid;

b. the value to be provided to the Debtor under the Bid, including the net economic effect upon the Debtor's estate, taking into account the Bid Protection;

c. the chapter 11 plan markup or draft asset purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed chapter 11 plan markup or draft asset purchase agreement;

d. the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

e. any benefit to the Debtor's bankruptcy estate from any assumption of liabilities or waiver of liabilities;

f. the certainty of a Qualified Bid leading to a confirmed Plan;

g. the Transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

h. any other factors the Debtor may reasonably deem relevant in the exercise of its fiduciary duties.

Promptly after determination of the Starting Bid and prior to the Auction, the Debtor will distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid with respect to the Equity and/or Assets.

If any Bid is determined by the Debtor not to be a Qualified Bid, the Debtor will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

## VII. No Qualified Bids.

If no Qualified Bids other than the Stalking Horse Bid are received by the Bid Deadline, then the Debtor may cancel the Auction, and may decide, in the Debtor's business judgment, to designate the Stalking Horse Bid as the Successful Bid, and pursue entry of an order approving a Transaction to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement. The Debtor shall file notice of any cancellation of the Auction and designation of the Stalking Horse Agreement as the Successful Bid with the Court, within two (2) business days of the determination of such election by the Debtor.

## VIII. Auction.

If one or more Qualified Bids are received by the Bid Deadline with respect to any applicable non-overlapping Assets or Equity, then the Debtor shall conduct the Auction with respect to such Equity and/or Assets. The Auction will be held on July 24, 2026, at the office of Brownstein Hyatt Farber Schreck, LLP, 675 15th Street, Suite 2900, Denver, CO 80202, or at such later time or other place as the Debtor determines in which case the Debtor shall timely notify all Qualified Bidders of such later time or other place, by announcing the change on the record at the Auction, or if the Auction has not yet commenced, by filing a notice on the docket of this Chapter 11 Case.[4]

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a. except as otherwise provided herein, the Auction will be conducted openly;

b. only Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

c. the Qualified Bidders, including the Stalking Horse Bidder, shall appear at the Auction through duly authorized representatives at the Auction;

d. only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtor and creditors along with their respective advisors; provided, however that creditors attending the Auction shall notify counsel for the Debtor of their intention to attend the Auction by emailing counsel within five (5) business days prior to the Auction;

[4] If the Debtor decides to hold a live, in-person Auction, subject to the Debtor's discretion, Qualified Bidders may still have the ability to submit Bids remotely.

e. bidding at the Auction will begin at the applicable Starting Bid;

f. Bids at the Auction, including any Bids by the Stalking Horse Bidder, must be made in minimum increments of $100,000.00 or such amount as the Debtor determines and announces at or prior to the Auction of additional value (including after payment of the Bid Protection to the Stalking Horse Bidder);

g. each Qualified Bidder will be permitted a reasonable time to respond to previous Bids at the Auction, as determined by the Debtor;

h. the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

i. no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record of the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Transaction and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase the Debtor's Equity or all or substantially all of the Debtor's Assets identified in such Bid if such Bid is selected as the Successful Bid; provided, however, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined Bid if the Debtor approves of such coordination in its discretion;

j. the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest Bid, subject to the Debtor's right to require last and final bids to be submitted on a "blind" basis;

k. the Debtor reserves the right, in its business judgment, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing amount; and

l. the Auction will be governed by such other Auction Procedures as may be announced by the Debtor and its advisors from time to time on the record at the Auction; provided that such other Auction Procedures are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtor to further the goal of attaining the highest or otherwise best offer for the Equity or applicable Assets.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtor from exercising its fiduciary duties under applicable law (as reasonably determined in good faith by the Debtor).

**IX. Acceptance of the Successful Bid.**

The Auction shall continue until only one Qualified Bid is the highest or otherwise best Bid to purchase the Debtor's Equity or all or substantially all of the Debtor's Assets in the Debtor's business judgment and in a manner consistent with the exercise of its fiduciary duties and outlined below in further detail (a "Successful Bid"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtor, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtor may consider the following factors in addition to any other factors that the Debtor deems appropriate: (a) the amount and nature of the total consideration; (b) the likelihood of the Qualified Bidder's ability to close a Transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by the Debtor's estate from the Transaction contemplated by the Bid Documents; (d) the tax consequences of such Qualified Bid; and (e) the certainty of the Debtor being able to confirm a chapter 11 plan.

For the avoidance of doubt, the Debtor may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different Equity or Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "Successful Bidder" or "Successful Bidders," with respect to the Equity or applicable Assets. The Debtor shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court.

**X. Designation of Backup Bidder.**

The Qualified Bidder or Qualified Bidders with the second highest or otherwise best bid(s) or combination(s) of bids (each, a "Backup Bid") to purchase the Debtor's Equity or all or substantially all of the Debtor's Assets (each, a "Backup Bidder") will be determined by the Debtor at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the earlier of: (i) the closing of the Transaction with the applicable Successful Bidder; and (ii) confirmation of the Plan. The Backup Bidder's Good Faith Deposit (if any) shall be held in escrow until the closing of the Transaction with the applicable Successful Bidder. If for any reason a Successful Bidder fails to consummate the purchase of such Equity or Assets within the time permitted after the entry of the Sale Order or the Confirmation Order (as applicable), then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such Equity or Assets, and the Backup Bidder shall be deemed a Successful Bidder for such Equity or Assets and shall be required to consummate the Transaction with the Debtor as soon as is commercially practicable without further order of the Court; provided that the Debtor shall file a notice with the Court.

**XI. Approval of Transaction.**

The Debtor will present the results of the Auction or, if no Auction, will present the Successful Bidder to the Court for approval at the Sale Hearing or Confirmation Hearing (each as

defined below), at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with the Bid Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid or Successful Bids were Qualified Bids as defined in the Bid Procedures; and (d) consummation of any Transaction(s) as contemplated by the Successful Bid(s) in the Auction will provide the highest or otherwise best offer for the Debtor's Equity or all or substantially all of the Debtor's Assets and is in the best interests of the Debtor and its estate.

## XII. Confirmation Hearing.

A hearing before the Bankruptcy Court to consider confirmation of the Plan (the "Confirmation Hearing") will be held at a later date, before the Honorable Kimberley H. Tyson, United States Bankruptcy Judge for the Bankruptcy Court for the District of Colorado at 721 19th Street, Denver, CO 80202, and otherwise in accordance with any scheduling orders entered by the Court relating to confirmation of the Plan.

**The Confirmation Hearing may be continued to a later date by the Debtor by sending notice prior to, or making an announcement at, the Confirmation Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Confirmation Hearing, the Debtor will present the Plan, which will incorporate the terms of the Successful Bid or Successful Bids, to the Court for confirmation.

## XIII. Return of Good Faith Deposit.

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Transaction, be credited to the purchase price paid for the Equity or the applicable Assets. If a Successful Bidder fails to consummate the Transaction, then the Good Faith Deposit (if any) shall be forfeited to, and retained irrevocably by, the Debtor, and the Debtor specifically reserves the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five (5) business days after the Auction or upon the permanent withdrawal of the applicable proposed Transaction, and the Good Faith Deposit of any Backup Bidders will be returned within five (5) business days after the consummation of the applicable Transaction or upon the permanent withdrawal of the applicable proposed Transaction.

Each Good Faith Deposit shall be held in interest free escrow and at no time shall be deemed property of the Debtor's estate absent further order of the Court, except as otherwise provided herein.

## XIV. Reservation of Rights.

The Debtor reserves its right to modify these Bid Procedures in its business judgment in a manner consistent with the exercise of its fiduciary duties, and in any manner that will best promote the goals of the bidding process, or impose, at or before the Auction (if held), additional customary terms and conditions on the Transaction, including, without limitation: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for

conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis.

## XV. Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Transaction, the Auction, and the construction and enforcement of these Bid Procedures, any written indications of interest, any Preliminary Bid Documents, or any Bid documents, as applicable, and consented to the entry of a final order or judgment in any way related to these Bid Procedures, the bid process, the Auction, the Sale Hearing, the Confirmation Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bid Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVI. Fiduciary Out.

Notwithstanding anything to the contrary in these Bid Procedures, nothing in these Bid Procedures or the Bid Procedures Order shall require the Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any Transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law; provided, however, that the foregoing does not constitute a finding by the Court or any other court of competent jurisdiction that the Debtor has complied with its fiduciary duties by taking, or refraining from, any such action.

Further, notwithstanding anything to the contrary in these Bid Procedures, through the date of the Auction (if held), nothing in these Bid Procedures or the Bid Procedures Order shall diminish the right of the Debtor or its directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate Transactions (each an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtor to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in the Debtor or any other party in interest in this Chapter 11 Case (including the U.S. Trustee), or any other entity regarding Alternate Proposals.

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>Glenwood Caverns Holdings LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-13137-KHT |

**NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNTS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 20, 2026, the above-captioned debtor and debtor in possession (the "Debtor") filed its *Motion for Entry of an Order (I) Approving Bidding Procedures for Debtor's Plan, (II) Authorizing Certain Bid Protections and Authorizing the Debtor to Enter into a Stalking Horse Agreement, (III) Scheduling an Auction and Related Dates thereto, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief* (the "Motion") (Docket No. 199).

On May 27, 2026, the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") entered its *Order (I) Approving Bidding Procedures for Debtor's Plan, (II) Authorizing Bid Protections and Authorizing the Debtor to Enter into a Stalking Horse Agreement,, (III) Scheduling an Auction and Related Dates thereto, (IV) Approving Contract Assumption and Assignment Procedures, and (V) Granting Related Relief*, (Docket No. ●) (the "Bidding Procedures Order")[2], which, among other things, approved the (a) Bidding Procedures pursuant to which the Debtor will solicit and select the highest and otherwise best offer for the sale (the "Transaction") of substantially all of the Debtor's Assets, or equity pursuant to a Plan of reorganization, (b) the procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Transaction, including, without limitation, notice of proposed cure amounts (the "Assumption and Assignment Procedures"), and (c) scheduled the confirmation hearing (the "Confirmation Hearing") to enter an order confirming the Plan effectuating the Transaction.

The Debtor's Plan will provide an opportunity for interested parties to acquire the Debtor's assets free and clear of liens or the equity of the Reorganized Debtor, subject to a competitive process set forth in the Bidding Procedures Order.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Glenwood Caverns Holdings LLC (6861). The location of the Debtor's headquarters is 51000 Two Rivers Plaza Road, Glenwood Springs, CO 81601.
[2] Capitalized terms used herein but not otherwise defined shall have the same meanings as ascribed in the Motion.

The Confirmation Hearing will commence on [●] (prevailing Mountain Time), or such other date and time that the Court may later direct or as agreed upon by the Debtor, and the Successful Bidder, before the Honorable Kimberley H. Tyson, United States Bankruptcy Judge, in the Bankruptcy Court located at Courtroom D, 721 19th Street, Denver, Colorado 80202. Any creditor or party in interest who wishes to have its position considered regarding the Motion must, in addition to filing its response or objection, appear at the scheduled hearing either in person or by videoconference, consistent with the Court's procedures as located on the Courts website: cob.uscourts.gov. The Debtor's presentation to the Court for approval of one or more highest or otherwise best bid(s) resulting from the Auction (each a "Successful Bid") does not constitute the Debtor's acceptance of such bid(s). The Debtor will have accepted the terms of a Successful Bid or Successful Bids only when such bid(s) has/have been approved by the Court pursuant to an order.

In connection with the Transaction, and as outlined in the Bidding Procedures Order, the Debtor may seek to assume and, in the case of an asset sale, assign certain executory contracts and unexpired leases of the Debtor (each, a "Potential Assumed Contract" and collectively, the "Potential Assumed Contracts") to the party that submits the highest and best bid at an Auction that is accepted by the Debtor and approved by the Court (the "Successful Bidder").

A schedule listing the Potential Assumed Contracts that may potentially be assumed and assigned as part of the Transaction is attached hereto as **Exhibit A** (the "Contracts Schedule"). The inclusion of any contract on the Contracts Schedule does NOT constitute an admission that a particular contract is an executory contract or unexpired lease or require or guarantee that such contract will be assumed or assigned, and all rights of the Debtor with respect thereto are reserved. The Cure Amounts, if any, that the Debtor believes are required to be paid to the applicable counterparty to cure any monetary defaults under each Potential Assumed Contract pursuant to Bankruptcy Code sections 365(b)(1)(A) and (B), to the extent that such Potential Assumed Contract is ultimately assumed and assigned, is set forth on the Contracts Schedule.

For any Potential Assumed Contract that is listed in the Contracts Schedule, the Successful Bidder may decide to (i) assume and assign the Potential Assumed Contracts, (ii) reject the Potential Assumed Contracts, or (iii) designate the Potential Assumed Contracts for a limited period of time until the Successful Bidder determines whether such Potential Assumed Contract should be (a) assumed and assigned or (b) rejected.

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A COUNTERPARTY TO A POTENTIAL ASSUMED CONTRACT THAT MAY BE ASSUMED AND ASSIGNED AS PART OF THE SALE.** Under the terms of the Assumption and Assignment Procedures, unless otherwise provided in the Successful Bidder's asset purchase agreement, at any time prior to the date of Closing of the Sale, the Debtor may (a) remove a Potential Assumed Contract from the Contracts Schedule or (b) modify the previously-stated Cure Amount associated with any Potential Assumed Contract. The Successful Bidder may also amend the Contracts Schedule. The presence of a Potential Assumed Contract listed on **Exhibit A** attached hereto does not constitute an admission that such Potential Assumed Contract is an executory contract or unexpired lease or that such Potential Assumed Contract will be assumed and assigned as part of the Sale. The Debtor reserves all of its rights, claims and causes of action with respect to the Potential Assumed Contracts listed on **Exhibit A** attached hereto.

IF YOU AGREE WITH THE PROPOSED CURE AMOUNTS LISTED IN **EXHIBIT A** WITH RESPECT TO YOUR POTENTIAL ASSUMED CONTRACT(S) AND OTHERWISE DO NOT OBJECT TO THE ASSUMPTION AND ASSIGNMENT OF YOUR POTENTIAL ASSUMED CONTRACT, YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION WITH RESPECT TO THE CURE AMOUNT.

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of a Potential Assumed Contract (an "Assumption and Assignment Objection"), including, without limitation, any objection relating to the Cure Amount or adequate assurance of the Successful Bidder's future ability to perform, must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amount that the Counterparty believes is required to cure defaults under the relevant Potential Assumed Contract, (d) be filed by June 22, 2026, and (e) be served on: (i) counsel for the Debtor, Brownstein Hyatt Farber Schreck, LLC, 675 15th Street, Suite 2900, Denver, Colorado 80202, Attn: Michael J. Pankow (mpankow@bhfs.com) and Micah G. Hardy (mhardy@bhfs.com); (ii) the U.S. Trustee; (iii) counsel to Stalking Horse Bidder (if any); and (iv) counsel to the Prepetition Lender, Stinson LLP, 1144 Fifteenth Street, Suite 2400, Denver, Colorado 80202, Attn: Deborah L. Bayles (deborah.bayles@stinson.com), 1201 Walnut Street, Suite 2900, Kansas City, Missouri 61406, Attn: Nicholas Zluticky (nicholas.zluticky@stinson.com) (collectively, the "Assumption and Assignment Objection Notice Parties"). In the event that any previously-stated Cure Amount is modified, the Debtor will promptly serve a Supplemental Assumption and Assignment Notice, by overnight mail and, if known, e-mail, on the applicable Counterparty.

Following the Auction, the Debtor will: (a) file the Notice of Successful Bidder and Backup Bidder(s), which will, among other things, include the identity of the Successful Bidder and (b) serve such notice on each Counterparty then identified on the Contracts Schedule. Each such Counterparty will then have an opportunity to object solely to such Successful Bidder's ability to provide adequate assurance of future performance with respect to the Counterparty's Potential Assumed Contract (an "Adequate Assurance Objection"). Any Adequate Assurance Objection must be filed on or before [July 20, 2026]; provided that any objection to either (i) the ability of the Stalking Horse Bidder to provide adequate assurance of future performance with respect to any Potential Assumed Contract or (ii) to any Cure Amounts that must be cured by either the Stalking Horse Bidder or any Successful Bidder that is not the Stalking Horse Bidder with respect to the Potential Assumed Contract, must be filed by [June 22, 2026].

The Court will hear and determine any Assumption and Assignment Objections and Adequate Assurance Objections at the Confirmation Hearing or such other date that the Debtor shall determine (subject to the Court's calendar).

Any Assumption and Assignment Objection shall not constitute an objection to any of the other relief requested in the Motion to be approved by the Confirmation Order. Parties wishing to object to the other relief requested in the Plan (excluding the relief provided in the Bidding Procedures Order) must timely file and serve a separate objection, stating with particularity such party's grounds for objection.

If a Counterparty fails to timely file with the Court and serve on the Assumption and Assignment Objection Notice Parties an Assumption and Assignment Objection, the Counterparty

shall be deemed to have consented to the assumption, assignment, and sale of the Potential Assumed Contract to the Successful Bidder (and Backup Bidder if the Backup Bidder becomes the Successful Bidder) and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The Cure Amounts set forth in the Contracts Schedule shall be controlling and will be the only amount necessary to cure outstanding defaults under the Potential Assumed Contract under Bankruptcy Code section 365(b), notwithstanding anything to the contrary in any Potential Assumed Contract, or any other document, and the Counterparty to the Potential Assumed Contract shall be deemed to have consented to the Cure Amounts and forever shall be barred from asserting any other claims related to such Contract against the Debtor or any Successful Bidder(s) (including the Backup Bidder(s) to the extent any Backup Bidder becomes a Successful Bidder) or their property.

Date: _____ __, 2026

**BROWNSTEIN HYATT FARBER SCHRECK LLP**

*/s/ DRAFT*

Michael J. Pankow, #21212
Micah G. Hardy, #58705
675 15th Street, Suite 2900
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
Email: mpankow@bhfs.com
mhardy@bhfs.com

*Counsel for the Debtor and Debtor in Possession*